PERETORE & PERETORE, P.C.
136 Woodbury Road, Suite L-2
Woodbury, New York 11797
(973) 729-8991
Attorneys for Fleet Financing Resources, LLC

__/s/ *Scott D. Chait*___
Scott D. Chait, Esq.
SDC#1967

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

|  |  |
|---|---|
| **In re:** | X   Case No. 16-22589(RDD) |
|  | :   Chapter 11 |
|  | : |
|  | : LIMITED OBJECTION OF |
| **ALLWAYS EAST TRANSPORTATION INC.,** | : FLEET FINANCING RESOURCES, LLC |
|  | : TO DEBTOR'S MOTION REQUESTING |
|  | : USE OF CASH COLLATERAL |
| Debtor. | : |
|  | : |
|  | : |
|  | : |
| ------------------------------------------------------X |  |

Fleet Financing Resources, LLC ("Fleet"), a lessor of the debtor, Allways East Transportation Inc. ("Debtor"), files this limited objection to Debtor's Motion Requesting Use of Cash Collateral (Doc. No. 38) for the following reasons:

## TRANSACTIONAL HISTORY

1. On about September 26, 2013, Fleet, as Lessor, and Debtor, as Lessee, entered into that certain Vehicle Lease Agreement ("Lease 1") pursuant to which Debtor was to make monthly lease payments for the lease and use of 4 school buses. A true and accurate copy of Lease 1 is attached hereto as **EXHIBIT A**, and is incorporated herein by reference as if set out in full.

1

2. In addition, on about September 22, 2015, Fleet, as Lessor, and Debtor, as Lessee, entered into another Vehicle Lease Agreement ("Lease 2"; and collectively with Lease 1 the "Leases") pursuant to which Debtor was to make monthly lease payments for the lease and use of 4 additional school buses. A true and accurate copy of Lease 2 is attached hereto as **EXHIBIT B**, and is incorporated herein by reference as if set out in full.

3. Upon information and belief, it is Fleet's understanding based upon on Debtor's representations, that Debtor is using the leased vehicles in its possession.

## **OBJECTION**

4. Fleet files this limited objection to the extent Debtor's motion does not provide for payments to Fleet under the Leases in accordance with 11 U.S.C. §365(d)(5). Specifically, under said bankruptcy code provision, a Chapter 11 debtor or trustee must begin performing the debtor's obligations under an unexpired lease of personal property (other than for consumer goods) within 60 days after the petition was filed and continue to do so until lease is assumed or rejected. 11 U.S.C. §365(d)(5). Here, the petition was filed on April 28, 2016. Thus, starting June 27, 2016, Debtor must begin making lease payments to Fleet under the Leases. While Debtor's thirty-day budget (Ex. C to Debtor's Motion) contains a $313,519.00 line item for "Bus & Automobile Lease Expenses", it is unclear as to whether or not it includes payments to Fleet. Moreover, neither the Motion nor the proposed form of Interim Order approving the use of cash collateral appear to contain any time constraints on the use of cash collateral (other than for the use of cash collateral to only be authorized until a final cash collateral order is entered). Thus, combined with the uncertainty in the budget, Fleet cannot discern if and when Debtor proposes to perform its section 365 obligations as to Fleet.

## CONCLUSION

For all the foregoing reasons, Fleet respectfully requests that this Court reject Debtor's motion to the extent the budget does not provide for Debtor's performance of its lease obligations to Fleet in accordance with 11 U.S.C. §365(d)(5).

                          PERETORE & PERETORE, P.C.
                          Attorneys for Secured Creditor
                          Fleet Financing Resources, LLC

By: */s/ Scott D. Chait*
      Scott D. Chait, Esq.

Dated:  June 3, 2016

**EXHIBIT A**

# VEHICLE LEASE AGREEMENT

| Fleet Financing Resources, LLC. (Lessor) | 10370 Hemet Street, Suite 350 Riverside, CA 92503 Phone: (951) 710-1010 Fax (951) 710-1016 | Lease Agreement Number: 103234 | Date: 09/26/13 |
|---|---|---|---|
| **A. Lessee:** Allways East Transportation, Inc. 870 Nepperhan Avenue Yonkers, NY 10703 | | **Supplier:** Action Auto Mart, Inc. 416 Mamaroneck Avenue Mamaroneck, NY 10543 | |

**B. Equipment Description:** See Attached Supplement - Lessee acknowledges receipt of Supplement

**C. Schedule of Payments:**

| Initial Term (In months) 37 | Total number of Payments 37 | Amount of Each Payment (Plus applicable taxes) SEE ATTACHED SUPPLEMENT | Total Initial Payment $20,000.00 | | | |
|---|---|---|---|---|---|---|
| | | | First in advance X | Last in advance | Doc. Fee | Deposit NONE |

**Mileage Charges:** Unlimited miles may be accumulated per each 12-month period. Lessee must pay zero cents per mile for mileage in excess of the allowed amount.

Disposition Alternative: TRAC Lease    Option Amount: See TRAC Addendum
(See reverse or following page, section 6, for description of Disposition Alternative)

**D. DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES.** THERE ARE NO WARRANTIES BY OR ON BEHALF OF LESSOR AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS LESSOR'S AGENT. LESSEE ACKNOWLEDGES AND AGREES BY ITS SIGNATURE BELOW AS FOLLOWS: (A) LESSOR MAKES NO WARRANTIES EITHER EXPRESSED OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CONDITION, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE EQUIPMENT; (B) LESSEE LEASES THE EQUIPMENT "AS IS" AND WITH ALL FAULTS; (C) LESSEE ACKNOWLEDGES THAT THE EQUIPMENT IS LEASED TO LESSEE SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (D) IF THE EQUIPMENT IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE SUPPLIER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, LESSEE'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE EQUIPMENT AND NOT AGAINST LESSOR; (E) LESSEE SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST LESSOR; AND (F) NO DEFECT, DAMAGE OR UNFITNESS OF THE EQUIPMENT FOR ANY PURPOSE SHALL RELIEVE LESSEE OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE LESSEE OF ANY OTHER OBLIGATION UNDER THIS AGREEMENT.

**E. Statutory Finance Lease ("Agreement"):** Lessee acknowledges and agrees that it is the intent of both parties to this Agreement that it qualify as a statutory finance lease under Article 2A of the Uniform Commercial Code. Lessee acknowledges and agrees that Lessee has selected both: 1) the Equipment and 2) Supplier from whom Lessor is to purchase the Equipment. Lessee acknowledges that Lessor has not participated in Lessee's selection of the Equipment or of the Supplier, and Lessor has not selected, manufactured, or supplied the Equipment. Lessee acknowledges that by this Agreement, Lessor has informed Lessee in writing that Lessee may have rights under the supply contract evidencing Lessor's purchase of the Equipment from the Supplier chosen by Lessee and that Lessee should contact the Supplier for a description of any such rights and any limitations of such rights.

**F. Amendments:** No term or provision of this Agreement may be amended, altered, waived, or discharged except by a written instrument signed by all parties to this Agreement.

THIS AGREEMENT, THE TERMS OF WHICH HAVE BEEN FREELY NEGOTIATED BY EACH PARTY, IS SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE OR FOLLOWING PAGE WHICH ARE MADE A PART HEREOF AND WHICH LESSEE AND LESSOR ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.

**THIS A NON-CANCELABLE AGREEMENT**

LESSEE UNDERSTANDS AND ACKNOWLEDGES THAT NO SUPPLIER, NOR ANY SALESMAN, OR AGENT OF ANY SUPPLIER, IS AN AGENT OF LESSOR. NO SUPPLIER, NOR ANY SALESMAN, OR AGENT OF ANY SUPPLIER, IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, AND NO REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE SUPPLIER, NOR ANY SALESMAN, OR AGENT OF ANY SUPPLIER, SHALL IN ANY WAY AFFECT LESSEE'S DUTY TO PAY THE RENTALS AND TO PERFORM LESSEE'S OBLIGATIONS SET FORTH IN THIS LEASE.

| Lessor: FLEET FINANCING RESOURCES, LLC. By: /s/ [signature] Title: An Authorized Officer Thereof | Lessee: Allways East Transportation, Inc. Signature: /s/ [signature] Title: [illegible] Koller, President |
|---|---|

**Guaranty:** In consideration of Lessor its successors and assigns entering in to this Agreement, the party(s) or individual(s) executing this Guaranty ("Guarantor", whether one or more) unconditionally and irrevocably guaranty to Lessor and Lessor's assigns, the prompt payment and performance of all obligations of the Lessee. Guarantor agrees that this is a guaranty of payment and not of collection, and that Lessor can proceed directly against Guarantor without first proceeding against Lessee or against the Equipment covered by the Agreement. Guarantor waives all defenses and notices, including those of protest, presentment, and demand. Guarantor agrees that Lessor can renew, extend, or otherwise modify the terms of the Agreement and Guarantor will be bound by such changes. If Lessee defaults under the Agreement, Guarantor will immediately perform all obligations of Lessee under the Agreement, including, but not limited to, paying all amounts due under the Agreement. Guarantor will pay to Lessor all expenses (including attorneys' fees) incurred by Lessor in enforcing Lessor's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Lessee or Guarantor and will bind Guarantor's heirs, personal representatives, successors and assigns. If more than one Guarantor has signed this Guaranty, each Guarantor agrees that his/her liability is joint and several. Guarantor authorizes Lessor or any of Lessor's designees to obtain and share with others credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Lessor determines are necessary. THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. GUARANTOR CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN CALIFORNIA OR IN ANY OTHER STATE WHERE LESSOR HAS AN OFFICE. GUARANTOR EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY.

/s/ [signature]
[illegible] Koller, Individual
Personal Guarantor Signature

## TERMS AND CONDITIONS

**1. Definitions; Reports:** The words "you" and "your" refer to the LESSEE, its successors and assigns, as shown on the reverse side or preceding page, as applicable (the "first page"). The words "we", "us", and "our" refer to the LESSOR, its successors and assigns as shown on the first page. You authorize us and our designees to obtain investigative credit reports regarding you and each guarantor from a credit bureau or a credit agency and to investigate the references given on any statement or data obtained, and to share such reports with others.

**2. Acceptance:** Lessee agrees to inspect the Equipment and to execute an Acknowledgement and Acceptance of Equipment by Lessee notice, as provided Lessor, after Lessee is satisfied that the Equipment is satisfactory in every respect to the Equipment. Lessee hereby authorizes Lessor to insert in this Lease serial numbers or other identifying data with respect. We agree to lease to you, and you agree to lease from us, the equipment, items, products, software, services, and other personal property described or referenced on the first page ("Equipment") for the term shown on the first page ("Initial Term"). We shall have no obligations hereunder until we accept and sign this Agreement at our offices. If this Agreement is executed by you and thereafter sent to us by facsimile transmission, then until such time as we have received the Agreement with your manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by us in our offices, the original Agreement and chattel paper and shall be admissible for all purposes as the original Agreement. You agree to promptly forward to us the Agreement with your manual signature thereon and upon receipt by us the Agreement with your manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

**3. Payments/Interim Rent:** This Lease shall commence upon the written acceptance hereof by Lessor. You promise to pay us the payments shown on the first page, in advance, commencing as of the first day of the Initial Term and continuing on the tenth day of each month in which a payment is due, without need of an invoice; provided, as indicated in the Schedule of Payments, the payments included in Total Initial Payment shall be paid upon your execution of this Agreement. If the contemplated lease transaction is not consummated, the Total Initial Payment may be retained by us as partial compensation for costs and expenses incurred in preparation for the transaction. On the first day of the Initial Term, you agree to pay us an interim rent amount equal to 1/30th of the monthly rental multiplied by the number of days elapsing between the date on which the first payment is made to the Supplier and the first day of the Initial Term.

X /s/ [initials]   (Lessee's Initial)

Your obligation to make payments and pay the amounts hereunder is absolute and unconditional and not subject to abatement, reduction or setoff for any reason whatsoever. If the date on which all payments have been made to the Supplier for the Equipment is the tenth day of a calendar month, then the Initial Term shall commence on such date; otherwise, the Initial Term shall commence on the tenth day of the following calendar month; and in each case the Initial Term shall continue for the number of months indicated on the first page.

Page 1 of 3

# VEHICLE LEASE AGREEMENT

## Terms and Conditions – Continued
## Agreement Number: 103234

The Deposit shown on the first page shall not bear interest and we may apply the Deposit to cure any default, in which event you will promptly restore the Deposit to its full amount. After all of the obligations under this Agreement are fully paid and performed, any remaining balance of the Deposit shall be refunded to you after the return of the Equipment to us at the termination of the Initial Term or of any Renewal Term.

4. **Liability; Location:** We are not responsible for any losses or injuries caused by the installation or use of the Equipment. You agree to reimburse us for and to defend us against all claims for losses or injuries caused by the Equipment. You agree to maintain records showing the location of each item of Equipment. You shall report such location to us upon our request. Your failure, to maintain records showing the location of each item of Equipment and/or to report the location of each item or Equipment shall constitute default.

5. **Maintenance; Installation:** You are responsible for installing and keeping the Equipment in good working order. You shall not make any alterations, additions, or improvements to the Equipment, which detract from its economic value or functional utility. All additions and improvements made to the Equipment shall be deemed accessions thereto, and shall not be removed if removal would impair the Equipment's economic value or functional utility. If the Equipment is damaged or lost, you agree to continue making scheduled payments unless you pay the Casualty Value as set forth below.

6. **Return; Disposition Alternatives; Option to Purchase:** At the end of the Initial Term, or any Renewal Term, you will, at your expense, immediately return the Equipment to us in a condition as good as received less normal wear and tear to any place in the United States we designate and maintain proper insurance until received by us. You also agree to pay us an administration fee of $100.00 for processing the return of the Equipment. You will also continue to make payments until the Equipment is received and accepted by us. So long as no default exists, at the end of the Initial Term and/or any Renewal Term, you will be liable for the terms and conditions of the Disposition Alternative indicated on the first page and described in detail below. In all cases, if you elect to purchase the Equipment or are required to purchase the Equipment, upon payment of the amount indicated on the first page ("Option Amount") plus any and all fees, sales taxes and other applicable taxes, we will transfer the Equipment to you AS IS-WHERE IS, WITHOUT ANY REPRESENTATION OR WARRANTY and we will release any security interest we may have in the Equipment. Unless expressly set forth in the indicated Disposition Alternative, you will have no option to purchase the Equipment. For any Disposition Alternative that includes an option to purchase, such purchase amount ("Option Amount") will be indicated on the first page or set forth in the Disposition Alternative. You will be responsible for any and all fees, sales tax and other applicable taxes plus any obligations we owed to you or your assigns associated with an Option Amount.

   A.  **Fair Market Value (FMV):** If this Alternative is selected, at the end of the Initial Term, you shall have the option to: (a) return the Equipment in accordance with Section 6 or (b), purchase all (but not less than all) of the Equipment for a Purchase Amount that is equal to the Equipment's Fair Market Value.

   B.  **Stated Purchase Option:** If this Alternative is selected, at the end of the Initial Term, you shall have the option to: (a) return the Equipment in accordance with Section 6 or (b) purchase all (but not less than all) of the Equipment for the stated Purchase Amount.

   C.  **Dollar Purchase Option:** At the end of the Initial Term, you may purchase the Equipment for such amount.

   D.  **Trac Lease:** At the end of the Initial Term, you must satisfy the terms of the Trac Lease Addendum. Lessee acknowledges receipt of Trac Lease Addendum.

   E.  **Closed End Lease:** At the end of the Initial Term, you must satisfy the terms of the Closed End Lease Addendum. Lessee acknowledges receipt of Closed End Lease Addendum

   F.  **Other:** If this Purchase Alternative in indicated, an addendum explaining the terms and conditions of said alternative must be included in this Agreement.

7. **Insurance:** You agree at all times to: (1) insure the Equipment against risk of loss, in an amount no less than the full replacement value of the Equipment, with loss payable to the Lessor. (ii) maintain general public liability insurance, including but not limited to product liability coverage, insuring Lessor and Lessee, with a severability of interest endorsement, or its equivalent, against any and all loss or liability for all damages, either to persons or property or otherwise, which might result from or happen in connection with the condition, use, or operation of the Equipment, with such limits and with an insurer satisfactory to Lessor, and (iii) name us on the policy as Loss Payee and Additional Insured all as required by us and from anyone who is acceptable to us. You agree to provide us certificates or other evidence of insurance acceptable to us, before this Agreement term begins, and during the term. If at any time you have failed to deliver to us a valid certificate of insurance reflecting such insurance as being in effect, then we will, in addition to the other remedies available hereunder, have the right, but no obligation, to: (1) have such insurance protecting us placed for the term of this Agreement at your expense and if so placed, we will add to your payment and you will pay us our costs of obtaining such insurance and any customary charges or fees of ours or our designee associated with such insurance together with interest thereon at the maximum rate permitted by applicable law, and/or (ii) charge a late charge as set forth below.

8. **Taxes and Fees:** You agree to pay when due or reimburse us for all taxes, fees, fines and penalties relating to use or ownership of the Equipment or to this Agreement, including documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency.

9. **Personal Property:** This Agreement is a lease. Your rights to the Equipment are those solely of a lessee. If, however, this Agreement is construed to be a financing, you grant us a security interest in the Equipment and all proceeds thereof and further grant to you a security interest in all of our accounts, accounts receivables, and rights to payment, whether now existing or arising in the future and further agree that said security interest in our accounts, accounts receivables and rights to payment secure all of our obligations to you or your assigns. The Equipment will be and shall remain personal property and, if requested by us, you will obtain real property waivers satisfactory to us. You shall keep the Equipment free from any and all liens and encumbrances. You shall give us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Equipment. You also agree to pay us on demand filing, registration, and releasing fees prescribed by the Uniform Commercial Code ("UCC") or other law.

10. **Titled Equipment.** Any Equipment that is subject to title registration shall be titled and registered as directly by us within 10 days of Lessee's receipt of the Equipment. **If the Equipment is not timely or properly registered within 10-day period, then, in addition to the other remedies available hereunder, Lessee shall be charged a late charge as set forth below and for each additional 30-day term the Equipment remains unregistered or improperly registered.**

                X _____ (Lessee's Initial)

11. **Default; Remedies:** If you do not pay when due or if you breach or fail to perform any of your other covenants and promises under this Agreement or any other agreement entered into by you and held or serviced by us or if you declare bankruptcy or insolvency or if you dissolve or terminate your entity existence or take any actions regarding the cessation or winding up of your business affairs, you will be in default. If Lessee is in default, Lessor may enter upon Lessee's premises and without any court order or other process of law may repossess and remove the Equipment, or render the Equipment unusable without removal, either with or without notice to Lessee hereby waive any trespass or right of action for damages by reason of such entry, removal or disabling. Any such repossession shall not constitute a termination of this lease unless Lessor so notifies Lessee in writing. If you are in default, at our election, we can accelerate and require that you pay as reasonable liquidated damages for loss of bargain, the "Accelerated Balance". The Accelerated Balance will be equal to the total of (i) accrued and unpaid amounts, (ii) the remaining payments and (iii) the actual cost to us of the Equipment multiplied by 20%. We can also pursue any of the remedies available to us under the UCC or any law. In addition, you agree to pay our reasonable attorneys' fees and actual costs including repossession and collection costs, and all non-sufficient funds charges and similar charges. To the extent permitted by law, you waive all rights and remedies conferred upon a lessee under Article 2A of the UCC.

12. **Late Charge:** If Lessee shall fail to make any payment required by this Lease within 10 days of the due date thereof, Lessee shall pay to the Lessor a service charge of 8% of the amount due, provided, however, that not more than one such service charge shall be made on any delinquent payment regardless of the length of the delinquency. In addition to the service charge, Lessee shall pay to the Lessor a $100 default fee with respect to any payment which becomes thirty (30) days past due. Lessee shall pay to Lessor any actual additional expenses incurred by Lessor in collection efforts. Lessee shall pay to Lessor interest on any delinquent payment or amount due under this Lease from the due date thereof until paid at the lesser of the maximum rate of interest allowed by law or 18% per annum.

13. **Time of Essence:** Time is of the essence of this Lease, and this provision shall not be impliedly waived by the acceptance on occasion of late or defective performance.

14. **Assignments; Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, SUBLEASE OR ENCUMBER THE EQUIPMENT OR THIS AGREEMENT. We may sell, transfer, assign, or encumber this agreement. You agree that if we sell, transfer, assign, or encumber this Agreement, the assignee will have the rights and benefits that we assign to the assignee and will not have to perform any of our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-off that you may have against us. We and our agents and representatives shall have the right at any time during regular business hours to inspect the Equipment and for that purpose to have access to the location of the Equipment.

15. **Risk of Loss:** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Equipment from any cause whatsoever and no loss, theft, damage or destruction of the Equipment shall relieve you of the obligation to make scheduled payments or any other obligation under this Agreement, and this Agreement shall remain in full force and effect, except as provided below. You shall promptly notify us in writing of such loss, theft, damage, or destruction. If damage of any kind occurs to any item of Equipment, you, at our option, shall at your expense (a) place the item in good repair, condition or working order, or (b) if the Equipment cannot be repaired or is lost, stolen or suffers a constructive loss under an insurance policy covering the Equipment, pay to us the "Casualty Value." The Casualty Value will be equal to the total of (i) accrued and unpaid amounts, (ii) the remaining payments discounted to present value using the Federal Funds rate as of the date of payment, and (iii) the actual cost to us of the Equipment multiplied by 20% (similarly discounted to present value from the date of expiration of the Initial Term).

16. **Choice of Law; Consent to Jurisdiction; Venue:** This Agreement shall be interpreted, and all rights and liabilities of the parties hereto and thereunder shall be determined and governed as to validity, interpretation, enforcement and effect, by the laws of the State of California. Without limiting the right of Lessor to bring any action or proceeding against Lessee in the courts of other jurisdictions, Lessee hereby irrevocably submits to the jurisdiction of any State or Federal court located in California or in any other state where Lessor has an office. Lessor and Lessee expressly waive any right to a trial by Jury.

17. **Indemnity.** Lessee shall indemnify Lessor against any claims, actions, damages, or liabilities, including all attorney fees, arising out of our connected with Equipment, without limitation. Such indemnification shall survive the expiration, cancellation, or termination of this lease. Lessee waives any immunity Lessee may have under any industrial insurance act, with regard to indemnification of Lessor.

18. **Miscellaneous:** During the term of this Agreement and any renewal hereof, you agree to provide us with all financial statements and copies of federal or state tax returns as we may reasonably request. If we supply you with labels, you shall label all items of Equipment and shall keep the same affixed in a prominent place. At Lessor's sole discretion and election, Lessor reserves the right to install a Telematics System (TS) into the Vehicle. In the event Lessor installs TS into the Vehicle, the TS shall not be removed from the Vehicle without Lessor's prior written consent. At all relevant times, the TS shall remain Lessor's property. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, such provisions shall be inapplicable and deemed omitted, but the remaining provisions hereof, including remaining default remedies, shall be given effect in accordance with the manifest intent hereof. You agree that any delay or failure to enforce our rights under this Agreement does not prevent us from enforcing any rights at a later time. You agree that the terms and conditions indicated above and on the first page are a complete and exclusive statement of our agreement and they may be modified only by written agreement signed by all of the parties hereto and not by course of performance. You agree that the microfilm or electronic duplication may be introduced in lieu of the original thereof and without further foundation. The parties hereto expressly waive the secondary evidence rule. You acknowledge receipt of a copy of this Agreement. You agree that this Agreement will be binding upon your successors, assigns, heirs, and legal representative. If your signature on any financing statement is required by law, you shall execute such supplemental instruments and financing statements we deem to be necessary and advisable and shall otherwise cooperate to defend our title by filing or otherwise. You agree that our waiver of any provision hereunder shall not constitute a waiver of any other matter. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of time price differential or interest, as applicable, permitted to be charged or collected by applicable law, and any such excess payment will be applied to payments in inverse order of maturity, and any remaining excess will be refunded you.

19. **Irrevocable Limited Power of Attorney:** Lessee does hereby irrevocably appoint Lessor and/or its assigns the true and lawful Attorney-in-Fact coupled with interest with full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done in the premises, as fully, to all intent and purposes as Lessee might or could do if personally present, with full power of substitution and revocation, to complete, sign, execute, file and deliver any title, registration or certificate of ownership, UCC financing statements, and to sell, lease, record interest, transfer interest otherwise dispose of the Vehicle leased by Lessee and which is financed by, assigned as collateral security to, or in which a security interest has been granted to Lessor and/or its assigns. You further grant to us a limited power of attorney to endorse, negotiate, or cash any insurance payment or claim for application to our indebtedness to you. Lessor and/or its assigns may apply the proceeds from any such sale, lease or other disposition against any and all obligations of the Lessee to Lessor and/or its assigns. You hereby authorize us and appoint us as your attorney-in-fact with the power of attorney to file this Agreement, any financing statement(s) or security agreement(s) with respect to the Equipment or any other collateral you provide to us in any state in the United States. You further authorize us to file this Agreement and such financing statements, security agreements and title or registration documents without your signature thereon in reliance on this Power of Attorney.

20. **Cross Collateral:**
To secure the payment and performance of each and every debt, liability and obligation of every type and description which Lessee may now or at any time hereafter owe to Fleet Financing Resources LLC f/k/a A-Z Resources, LLC ("Lessor") (whether such debt, liability or obligation now exists or is hereafter created, acquired or

incurred, arises out of a lease, installment sale contract or loan, swap, derivative, foreign exchange, hedge or other similar agreement, whether or not it is currently contemplated by the Lessee and Lessor, whether or not any documents evidencing it refer to this Vehicle Lease Agreement, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, joint, several or joint and several, and all costs and expenses incurred by Lessor to obtain, preserve, perfect and enforce the security interest granted herein and to maintain, preserve and collect the property subject to the security interest, all such debts, liabilities and obligations being herein collectively referred to as the "Obligations"). Lessee hereby grants to Lessor a first-priority security interest in all of the following property:

Equipment: 2007 GM Thomas School Bus 1GDJG31U151156340, 2007 GM Girardin School Bus 1GBHG31U971202412, 2008 Blue Bird School Bus > 1GBJG31U271231980

together with all substitutions, replacements, parts, accessories, supplies, improvements, additions and accessions now or hereafter affixed thereto or used in connection therewith, and all proceeds and products thereof (referred to collectively as the "Collateral" and individually as an "Item"), and all books and records of Lessee pertaining to the Collateral. After Lessee signs this Vehicle Lease Agreement, Lessee authorizes Lessor to insert any missing information or change any inaccurate information (such as the model year of the Collateral or its serial number or VIN) into this description of Collateral.

21. **Cross Default:**
Each of the following events shall constitute an "Event of Default":
(i) Lessee or any guarantor shall be in breach of or in default in the payment or performance of any material obligation under any credit agreement, conditional sales contract, lease or other contract, howsoever arising;
(ii) an event of default shall occur under any other obligation Lessee or guarantor owes to Lessor;
(iii) an event of default shall occur under any indebtedness Lessee may now or hereafter owe to any affiliate of Lessor.

_____ Initial

Page 3 of 3



**FLEET FINANCING RESOURCES**

*10370 Hemet St., Suite 350 · Riverside CA 92503 · Tel (800) 421-3660 · Fax (951) 710-1016 · www.ffresources.com*

Agreement # 103234
Date 09/26/13

## Schedule of Equipment

This Addendum dated 09/26/13, is made a part of the Vehicle Lease Agreement # 103234 entered into and between the Lessee, identified below, on 09/26/13 and Fleet Financing Resources ("Lessor"). Unless otherwise defined herein, terms in the note shall have the same meaning when used herein.

| Description | VIN # | Mileage |
|---|---|---|
| 2007 GM Thomas School Bus | 1GDJG31U151156340 | 102485 |
| 2007 GM Girardin School Bus | 1GBHG31U971202412 | 140858 |
| 2008 Blue Bird School Bus | 1GBJG31U271231980 | 85601 |
| 2008 Blue Bird School Bus | 1GBJG31U771232221 | 81759 |

Lessee: Allways East Transportation, Inc.

By: _____
Judith Koller
President

Lessor: Fleet Financing Resources

By: _____
Title: Operations Manager



**FLEET FINANCING RESOURCES, LLC.**

*10370 Hemet St., Suite 350 · Riverside CA 92503 · Tel (800) 421-3660   Fax (951) 710-1016   www.ffresources.com*

Agreement # 103234
Date 09/26/13

# Supplement to Agreement

This is a Supplement to the Agreement identified above between Lessor and Lessee (the agreement"). Upon the execution and delivery by Lessor and Lessee of the Supplement, Lessor hereby agrees to lease the Equipment described below upon the terms and conditions of this Supplement and the Agreement. All terms and conditions of the Agreement shall remain in full force and in effect except to the extent modified by this Supplement.

### Equipment Description:

| Description | VIN |
| --- | --- |
| 2007 GM Thomas School Bus | 1GDJG31U151156340 |
| 2007 GM Girardin School Bus | 1GBHG31U971202412 |
| 2008 Blue Bird School Bus | 1GBJG31U271231980 |
| 2008 Blue Bird School Bus | 1GBJG31U771232221 |

SCHEDULE OF MONTHLY PAYMENTS/INSTALLMENTS, PER SCHEDULE:

Successive Monthly Payments/Installments in the amounts shown below shall be due as per paragraph three of the Terms and Conditions of the Vehicle Lease Agreement

| 1 | Payments / Installments @ | $20,000.00 |
| 36 | Payments / Installments @ | $4,150.65 |

**Lessee hereby verifies the above as true and correct and acknowledges receipt of a copy hereof.**

Lessee:   Allways East Transportation, Inc.        Lessor:   Fleet Financing Resources, LLC.

Signature _[signature]_                            Signature _[signature]_

Name   Judith Koller                               Name   Benita Williams

Title   President                                  Title   Operations Manager

**FLEET FINANCING RESOURCES, LLC.**

10370 Hemet St. Suite 350 · Riverside CA 92503   Tel (800) 421-3660 · Fax (951) 710-1016 · www.ffresources.com

Agreement # 103234
Date 09/26/13

# TRAC ADDENDUM

This TRAC Addendum dated this 09/26/13 amends and supplements the terms and conditions of that certain Vehicle Lease Agreement ("Lease") (no.103234) entered into by and between the Lessee identified below and Fleet Financing Resources, LLC. ("Lessor"). Unless otherwise defined herein, terms in the Lease shall have the same meaning when used herein.

**1) DEFINITIONS:**
  a) "Estimated Residual Value" shall mean $14,589.25 .
  b) "Actual Residual Value" shall mean the purchase price actually received by Lessor after deducting all reasonable selling and advertising expenses.
  c) "Termination Date" shall mean the scheduled expiration date of the lease.

**2) TERMINAL RENTAL ADJUSTMENT CLAUSE:**

  a) During the 60-day period prior to the Termination Date, Lessee may market the Vehicle(s) and solicit prospective parties for the purchase of the Vehicle(s). Lessor shall review any offers to purchase the Vehicle(s) from prospective purchasers, including an offer from Lessee.

  b) If an offer to purchase the Vehicle(s) is accepted by Lessor, then the Vehicle(s) shall be sold by Lessor to the highest bidder within ten (10) days after the Termination Date and the Actual Residual Value shall be equal the purchase price actually received by Lessor after deducting all reasonable selling and marketing expenses.

  c) If the Actual Residual Value is less than the Estimated Residual Value, then Lessee shall pay such deficiency to Lessor on the Termination Date and shall have no further rights to the Vehicle(s).

  d) If the Actual Residual Value equals or exceeds the Estimated Residual Value, then (i) Lessor shall retain the Estimated Residual Value and (ii) Lessor shall pay the excess amount (less all reasonable selling and marketing expenses) to Lessee on the later of the Termination Date or ten (10) days after any sale by Lessor of the Vehicle(s) subsequent to the Termination Date.

  e) If no offer is received, or if no offer to purchase the Vehicle(s) is accepted by Lessor or if the Vehicle(s) is not sold for any reason, then the Actual Residual Value shall be deemed to be zero (0) and the Lessee shall be deemed the purchaser and shall pay the Estimated Residual Value to Lessor.

  f) Lessor shall, upon receipt of the purchase price of the Vehicle(s), convey title to the Vehicle(s) to the purchaser by a bill of sale, which transfer shall be "**AS-IS, WHERE IS**", with all faults, without recourse to Lessor and without any representation or warranty of any kind whatsoever by Lessor, express or implied.

1

3) **GENERAL:**

a) If an event of default occurs and is continuing under the Lease, the failure by Lessee to perform or observe any other term, covenant, or condition of this Master Lease or any Equipment Schedule, which is not cured within 5 days of receipt of notice thereof from Lessor or Assignee, then: Lessor shall have all the rights and remedies provided by the Lease, and this Addendum; Lessor shall have no duty or obligation to pay any excess amount to Lessee under Section 2 of this Addendum; and Lessor shall account for the proceeds of any disposition of the Vehicle(s) only as set forth in the Lease.

b) Except as expressly amended by this Addendum, all terms and conditions, of the Lease shall remain in full force and effect including, without limitation, Lessee's obligations with respect to the return of the Vehicle(s) at the end of the Lease term.

c) Lessee has been advised that Lessee will not be treated as the owner of the Vehicle(s) for federal income tax purposes.

d) Lessee agrees that if any fine, penalty or other assessment is levied or assessed against any of the Vehicles(s) (a "Levy"), the Lessee shall pay the amount of any Levy immediately upon notice thereof. If payment of any Levy is sought from Lessor or if nonpayment of any Levy may involve the seizure, forfeiture of loss of any Vehicle(s), then, Lessor may pay, but shall not be obligated to pay, the amount of such Levy. Lessee waives notice of any such Levy prior to Lessor's payment thereof, and Lessee agrees to reimburse Lessor any amount paid by Lessor in connection therewith immediately upon Lessor's request.

| Lessee: | Allways East Transportation, Inc. | Lessor: | Fleet Financing Resources, LLC. |
|---|---|---|---|
| By: | [signature] | By: | [signature] |
| Print: | Judith Koller | Print: | Benita Williams |
| Title: | President | Title: | Operations Manager |

2

**EXHIBIT B**

## VEHICLE LEASE AGREEMENT

| Fleet Financing Resources, LLC. (Lessor) | 10370 Hemet Street, Suite 350 Riverside, CA 92503 Phone: (951) 710-1010  Fax: (951) 710-1016 | Lease Agreement Number: 103861 | Date: 09/22/15 |
|---|---|---|---|
| **A. Lessee:** Allways East Transportation Inc. 870 Nepperhan Avenue Yonkers, NY 10703 | | **Supplier:** Action Auto Mart, Inc. 250 E. Hartsdale Avenue Hartsdale, NY 10530 | |

**B. Equipment Description:** See Attached Supplement – Lessee acknowledges receipt of Supplement

**C. Schedule of Payments:**

| Initial Term (in months) 55 | Total number of Payments 55 | Amount of Each Payment (Plus applicable taxes) SEE ATTACHED SUPPLEMENT | Total Initial Payment $65,800.00 | | | |
|---|---|---|---|---|---|---|
| | | | First in advance X | Last in advance | Doc. Fee | Deposit NONE |

**Mileage Charges:** Unlimited miles may be accumulated per each 12-month period. Lessee must pay zero cents per mile for mileage in excess of the allowed amount.

**Disposition Alternative:** TRAC Lease         **Option Amount:** See TRAC Addendum
(See reverse or following page, section 6, for description of Disposition Alternative)

**D. DISCLAIMER OF WARRANTIES AND CLAIMS; LIMITATION OF REMEDIES.** THERE ARE NO WARRANTIES BY OR ON BEHALF OF LESSOR AND NEITHER THE SUPPLIER NOR ANY OTHER PARTY IS LESSOR'S AGENT. LESSEE ACKNOWLEDGES AND AGREES BY ITS SIGNATURE BELOW AS FOLLOWS: (A) LESSOR MAKES NO WARRANTIES EITHER EXPRESSED OR IMPLIED AS TO THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY, ITS FITNESS OR SUITABILITY FOR ANY PARTICULAR PURPOSE, ITS DESIGN, ITS CONDITION, ITS CAPACITY, ITS QUALITY, OR WITH RESPECT TO ANY CHARACTERISTICS OF THE EQUIPMENT; (B) LESSEE LEASES THE EQUIPMENT "AS IS" AND WITH ALL FAULTS; (C) LESSEE ACKNOWLEDGES THAT THE EQUIPMENT IS LEASED TO LESSEE SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES; (D) IF THE EQUIPMENT IS NOT PROPERLY INSTALLED, DOES NOT OPERATE AS REPRESENTED OR WARRANTED BY THE SUPPLIER OR MANUFACTURER, OR IS UNSATISFACTORY FOR ANY REASON, REGARDLESS OF CAUSE OR CONSEQUENCE, LESSEE'S ONLY REMEDY, IF ANY, SHALL BE AGAINST THE SUPPLIER OR MANUFACTURER OF THE EQUIPMENT AND NOT AGAINST LESSOR; (E) LESSEE SHALL HAVE NO REMEDY FOR CONSEQUENTIAL OR INCIDENTAL DAMAGES AGAINST LESSOR; AND (F) NO DEFECT, DAMAGE OR UNFITNESS OF THE EQUIPMENT FOR ANY PURPOSE SHALL RELIEVE LESSEE OF THE OBLIGATION TO MAKE PAYMENTS OR RELIEVE LESSEE OF ANY OTHER OBLIGATION UNDER THIS AGREEMENT.

**E. Statutory Finance Lease ("Agreement"):** Lessee acknowledges and agrees that it is the intent of both parties to this Agreement that it qualify as a statutory finance lease under Article 2A of the Uniform Commercial Code. Lessee acknowledges and agrees that Lessee has selected both: 1) the Equipment and 2) Supplier from whom Lessor is to purchase the Equipment. Lessee acknowledges that Lessor has not participated in Lessee's selection of the Equipment or of the Supplier, and Lessor has not selected, manufactured, or supplied the Equipment. Lessee acknowledges that by this Agreement, Lessor has informed Lessee in writing that Lessee may have rights under the supply contract evidencing Lessor's purchase of the Equipment from the Supplier chosen by Lessee and that Lessee should contact the Supplier for a description of any such rights and any limitations of such rights.

**F. Amendments:** No term or provision of this Agreement may be amended, altered, waived, or discharged except by a written instrument signed by all parties to this Agreement.
THIS AGREEMENT, THE TERMS OF WHICH HAVE BEEN FREELY NEGOTIATED BY EACH PARTY, IS SUBJECT TO THE TERMS AND CONDITIONS ON THE REVERSE SIDE OR FOLLOWING PAGE WHICH ARE MADE A PART HEREOF AND WHICH LESSEE AND LESSOR ACKNOWLEDGE THEY HAVE READ AND ACCEPTED.

**THIS IS A NON-CANCELABLE AGREEMENT**

LESSEE UNDERSTANDS AND ACKNOWLEDGES THAT NO SUPPLIER, NOR ANY SALESMAN, OR AGENT OF ANY SUPPLIER, IS AN AGENT OF LESSOR, NO SUPPLIER, NOR ANY SALESMAN, OR AGENT OF ANY SUPPLIER, IS AUTHORIZED TO WAIVE OR ALTER ANY TERM OR CONDITION OF THIS LEASE, AND NO REPRESENTATION AS TO THE EQUIPMENT OR ANY OTHER MATTER BY THE SUPPLIER, NOR ANY SALESMAN, OR AGENT OF ANY SUPPLIER, SHALL IN ANY WAY AFFECT LESSEE'S DUTY TO PAY THE RENTALS AND TO PERFORM LESSEE'S OBLIGATIONS SET FORTH IN THIS LEASE.

| Lessor: FLEET FINANCING RESOURCES, LLC. | Lessee: Allways East Transportation Inc. |
|---|---|
| By: [signature] | Signature: X [signature] |
| Title: An Authorized Officer Thereof | Title: Judith Koller, President |

X [signature]
Judith Koller, Individual
Personal Guarantor Signature

**Guaranty:** In consideration of Lessor its successors and assigns entering in to this Agreement, the party(s) or individual(s) executing this Guaranty ("Guarantor", whether one or more) unconditionally and irrevocably guaranty to Lessor and Lessor's assigns, the prompt payment and performance of all obligations of the Lessee. Guarantor agrees that this is a guaranty of payment and not of collection, and that Lessor can proceed directly against Guarantor without first proceeding against Lessee or against the Equipment covered by the Agreement. Guarantor waives all defenses and notices, including those of protest, presentment, and demand. Guarantor agrees that Lessor can renew, extend, or otherwise modify the terms of the Agreement and Guarantor will be bound by such changes. If Lessee defaults under the Agreement, Guarantor will immediately perform all obligations of Lessee under the Agreement, including, but not limited to, paying all amounts due under the Agreement. Guarantor will pay to Lessor all expenses (including attorneys' fees) incurred by Lessor in enforcing Lessor's rights against Guarantor. This Guaranty will not be discharged or affected by the death, dissolution, termination, bankruptcy or insolvency of Lessee or Guarantor and will bind Guarantor's heirs, personal representatives, successors and assigns. If more than one Guarantor has signed this Guaranty, each Guarantor agrees that his/her liability is joint and several. Guarantor authorizes Lessor or any of Lessor's designees to obtain and share with others credit bureau reports regarding Guarantor's personal credit, and make other credit inquiries that Lessor determines are necessary. THIS GUARANTY IS GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA. GUARANTOR CONSENTS TO THE JURISDICTION OF ANY STATE OR FEDERAL COURT LOCATED IN CALIFORNIA OR IN ANY OTHER STATE WHERE LESSOR HAS AN OFFICE. GUARANTOR EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY.

**TERMS AND CONDITIONS**

1. **Definitions; Reports:** The words "you" and "your" refer to the LESSEE, its successors and assigns, as shown on the reverse side or preceding page, as applicable (the "first page"). The words "we", "us", and "our" refer to the LESSOR, its successors and assigns as shown on the first page. You authorize us and our designees to obtain investigative credit reports regarding you and each guarantor from a credit bureau or a credit agency and to investigate the references given on any statement or data obtained, and to share such reports with others.

2. **Acceptance:** Lessee agrees to inspect the Equipment and to execute an Acknowledgement and Acceptance of Equipment by Lessee notice, as provided Lessor, after Lessee is satisfied that the Equipment is satisfactory in every respect to the Equipment. Lessee hereby authorizes Lessor to insert in this Lease serial numbers or other identifying data with respect. We agree to lease to you, and you agree to lease from us, the: equipment, items, products, software, services, and other personal property described or referenced on the first page ("Equipment") for the term shown on the first page ("Initial Term"). We shall have no obligations hereunder until we accept and sign this Agreement at our offices. If this Agreement is executed by you and thereafter sent to us by facsimile transmission, then until such time as we have received the Agreement with your manual signature thereon, such facsimile transmission shall constitute, upon acceptance and execution by us in our offices, the original Agreement and chattel paper and shall be admissible for all purposes as the original Agreement. You agree to promptly forward to us the Agreement with your manual signature thereon and upon receipt by us the Agreement with your manual signature thereon shall constitute the chattel paper in lieu of such facsimile transmission.

3. **Payments/Interim Rent:** This Lease shall commence upon the written acceptance hereof by Lessor. You promise to pay us the payments shown on the first page, in advance, commencing as of the first day of the Initial Term and continuing on the Twenty-Fifth day of each month in which a payment is due, without need of an invoice; provided, as indicated in the Schedule of Payments, the payments included in Total Initial Payment shall be paid upon your execution of this Agreement. If the contemplated lease transaction is not consummated, the Total Initial Payment may be retained by us as partial compensation for costs and expenses incurred in preparation for the transaction. On the first day of the Initial Term, you agree to pay us an interim rent amount equal to 1/30th of the monthly rental multiplied by the number of days elapsing between the date on which the first payment is made to the Supplier and the first day of the Initial Term.
   [X]  _____ (Lessee's Initial)
Your obligation to make payments and pay other amounts hereunder is absolute and unconditional and not subject to abatement, reduction or set-off for any reason whatsoever. If the date on which all payments have been made to the Supplier for the Equipment is the Twenty-Fifth day of a calendar month, then the Initial Term shall commence on such date; otherwise, the Initial Term shall commence on the Twenty-Fifth day of the following calendar month; and in each case the Initial Term shall continue for the number of months indicated on the first page.

Page 1 of 3

Pg 14 of 18

# VEHICLE LEASE AGREEMENT

**Terms and Conditions – Continued**
**Agreement Number: 103861**

The Deposit shown on the first page shall not bear interest and we may apply the Deposit to cure any default, in which event you will promptly restore the Deposit to its full amount. After all of the obligations under this Agreement are fully paid and performed, any remaining balance of the Deposit shall be refunded to you after the return of the Equipment to us at the termination of the initial Term or of any Renewal Term.

**4. Liability; Location:** We are not responsible for any losses or injuries caused by the installation or use of the Equipment. You agree to reimburse us for and to defend us against all claims for losses or injuries caused by the Equipment. You agree to maintain records showing the location of each item of Equipment. You shall report such location to us upon our request. Your failure to maintain records showing the location of each item of Equipment and/or to report the location of each item of Equipment shall constitute default.

**5. Maintenance; Installation:** You are responsible for installing and keeping the Equipment in good working order. You shall not make any alterations, additions, or improvements to the Equipment, which detract from its economic value or functional utility. All additions and improvements made to the Equipment shall be deemed accessions thereto, and shall not be removed if removal would impair the Equipment's economic value or functional utility. If the Equipment is damaged or lost, you agree to continue making scheduled payments unless you pay the Casualty Value as set forth below.

**6. Return; Disposition Alternatives; Option to Purchase:** At the end of the Initial Term, or any Renewal Term, you will, at your expense, immediately return the Equipment to us in a condition as good as received less normal wear and tear to any place in the United States we designate and maintain proper insurance until received by us. You also agree to pay us an administration fee of $100.00 for processing the return of the Equipment. You will also continue to make payments until the Equipment is received and accepted by us. So long as no default exists, at the end of the Initial Term and/or any Renewal Term, you will be liable for the terms and conditions of the Disposition Alternative indicated on the first page and described in detail below. In all cases, if you elect to purchase the Equipment or are required to purchase the Equipment, upon payment of the amount indicated on the first page ("Option Amount") plus any and all fees, sales taxes and other applicable taxes, we will transfer the Equipment to you AS IS-WHERE IS, WITHOUT ANY REPRESENTATION OR WARRANTY and we will release any security interest we may have in the Equipment. Unless expressly set forth in the Indicated Disposition Alternative, you will have no option to purchase the Equipment. For any Disposition Alternative that Includes an option to purchase, such purchase amount ("Option Amount") will be indicated on the first page or set forth in the Disposition Alternative. You will be responsible for any and all fees, sales tax and other applicable taxes plus any obligations we owed to you or your assigns associated with an Option Amount.

A. Fair Market Value (FMV): If this Alternative is selected, at the end of the Initial Term, you shall have the option to: (a) return the Equipment in accordance with Section 6 or (b), purchase all (but not less than all) of the Equipment for a Purchase Amount that is equal to the Equipment's Fair Market Value.

B. Stated Purchase Option: If this Alternative is selected, at the end of the Initial Term, you shall have the option to: (a) return the Equipment in accordance with Section 6 or (b) purchase all (but not less than all) of the Equipment for the stated Purchase Amount.

C. Dollar Purchase Option: At the end of the Initial Term, you may purchase the Equipment for such amount.

D. Trac Lease: At the end of the Initial Term, you must satisfy the terms of the Trac Lease Addendum. Lessee acknowledges receipt of Trac Lease Addendum.

E. Closed End Lease: At the end of the Initial Term, you must satisfy the terms of the Closed End Lease Addendum. Lessee acknowledges receipt of Closed End Lease Addendum

F. Other: If this Purchase Alternative is indicated, an addendum explaining the terms and conditions of said alternative must be included in this Agreement.

**7. Insurance:** You agree at all times to: (1) insure the Equipment against risk of loss, in an amount no less than the full replacement value of the Equipment, with loss payable to the Lessor. (ii) maintain general public liability insurance, including but not limited to product liability coverage, insuring Lessor and Lessee, with a severability of interest endorsement, or its equivalent, against any and all loss or liability for all damages, either to persons or property or otherwise, which might result from or happen in connection with the condition, use, or operation of the Equipment, with such limits and with an insurer satisfactory to Lessor, and (iii) name us on the policy as Loss Payee and Additional Insured all as required by us and from anyone with or connection with us. You agree to provide us certificates or other evidence of insurance acceptable to us, before this Agreement term begins, and during the term. If at any time you have failed to deliver to us a valid certificate of insurance reflecting such insurance as being in effect, then we will, in addition to the other remedies available hereunder, have the right, but no obligation, to: (1) have such insurance protecting us placed for the term of this Agreement at your expense and if so placed, we will add to your payment and you will pay us our costs of obtaining such insurance and any customary charges or fees of ours or our designee associated with such insurance together with interest thereon at the maximum rate permitted by applicable law, and/or (ii) charge a late charge as set forth below.

**8. Taxes and Fees:** You agree to pay when due or reimburse us for all taxes, fees, fines and penalties relating to use or ownership of the Equipment or to this Agreement, including documentary stamp taxes, now or hereafter imposed, levied or assessed by any federal, state or local government or agency.

**9. Personal Property:** This Agreement is a lease. Your rights to the Equipment are those solely of a lessee. If, however, this Agreement is construed to be a financing, you grant us a security interest in the Equipment and all proceeds thereof and further grant to you a security interest in all of our accounts, accounts receivables, and rights to payment, whether now existing or arising in the future and further agree that said security interest in our accounts, accounts receivables and rights to payment secure all of our obligations to you or your assigns. The Equipment will be and shall remain personal property and, if requested by us, you will obtain real property waivers satisfactory to us. You shall keep the Equipment free from any and all liens and encumbrances. You shall give us immediate notice of any attachment or other judicial process, liens or encumbrances affecting the Equipment. You also agree to pay us on demand filing, registration, and releasing fees prescribed by the Uniform Commercial Code ("UCC") or other law.

**10. Titled Equipment:** Any Equipment that is subject to title registration shall be titled and registered as directed by us within 10 days of Lessee's receipt of the Equipment. If the Equipment is not timely or properly titled and registered within 10-day period, then, in addition to the other remedies available hereunder, Lessee shall be charged a late charge as set forth below and for each additional 30-day term the Equipment remains untitled, unregistered or improperly registered.

X _____ (Lessee's initial)

**11. Default; Remedies:** If you do not pay when due or if you breach or fail to perform any of your other covenants and promises under this Agreement or any other agreement entered into by you and held or serviced by us or if you declare bankruptcy or insolvency or if you dissolve or terminate your entity existence or take any actions regarding the cessation or winding up of your business affairs, you will be in default. If

Lessee is in default, Lessor may enter upon Lessee's premises and without any court order or other process of law may repossess and remove the Equipment, or render the Equipment unusable without removal, either with or without notice to Lessee hereby waive any trespass or right of action for damages by reason of such entry, removal, or disabling. Any such repossession shall not constitute a termination of this lease unless Lessor so notifies Lessee in writing. If you are in default, at our election, we can accelerate and require that you pay, as reasonable liquidated damages for loss of bargain, the "Accelerated Balance". The Accelerated Balance will be equal to the total of (i) accrued and unpaid amounts, (ii) the remaining payments and (iii) the actual cost to us of the Equipment multiplied by 20%. We can also pursue any of the remedies available to us under the UCC or any law. In addition, you agree to pay our reasonable attorneys' fees and actual costs including repossession and collection costs, and all non-sufficient funds charges and similar charges. To the extent permitted by law, you waive all rights and remedies conferred upon a lessee under Article 2A of the UCC.

**12. Late Charge:** If Lessee shall fail to make any payment required by this Lease within 10 days of the due date thereof, Lessee shall pay to the Lessor a service charge of 5% of the amount due, provided, however, that not more than one such service charge shall be made on any delinquent payment regardless of the length of the delinquency. In addition to the service charge, Lessee shall pay to the Lessor a $100 default fee with respect to any payment, which becomes thirty (30) days past due. Lessee shall pay to Lessor any actual additional expenses incurred by Lessor in collection efforts. Lessee shall pay to Lessor interest on any delinquent payment or amount due under this Lease from the due date thereof until paid at the lesser of the maximum rate of interest allowed by law or 18% per annum.

**13. Time of Essence:** Time is of the essence of this Lease, and this provision shall not be impliedly waived by the acceptance on occasions of late or defective performance.

**14. Assignments; Inspection:** YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN, SUBLEASE OR ENCUMBER THE EQUIPMENT OR THIS AGREEMENT. We may sell, transfer, assign, or encumber this agreement. You agree that if we sell, transfer, assign, or encumber this Agreement, the assignee will have the rights and benefits that we assign to the assignee and will not have to perform any of our obligations. You agree that the rights of the assignee will not be subject to any claims, defenses or set-off that you may have against us. We and our agents and representatives shall have the right at any time during regular business hours to inspect the Equipment and for that purpose to have access to the location of the Equipment.

**15. Risk of Loss:** You hereby assume and shall bear the entire risk of loss, theft, damage and destruction of the Equipment from any cause whatsoever and no loss, theft, damage or destruction of the Equipment shall relieve you of the obligation to make scheduled payments or any other obligation under this Agreement, and this Agreement shall remain in full force and effect, except as provided below. You shall promptly notify us in writing of such loss, theft, damage, or destruction. If damage of any kind occurs to any item of Equipment, you, at our option, shall at your expense (a) place the item in good repair, condition or working order, or (b) if the Equipment cannot be repaired or is lost, stolen or suffers a constructive loss under an insurance policy covering the Equipment, pay to us the "Casualty Value." The Casualty Value will be equal to the total of (i) accrued and unpaid amounts, (ii) the remaining payments discounted to present value using the Federal Funds rate as of the date of payment, and (iii) the actual cost to us of the Equipment multiplied by 20% (similarly discounted to present value from the date of expiration of the Initial Term).

**16. Choice of Law; Consent to Jurisdiction; Venue:** This Agreement shall be interpreted, and all rights and liabilities of the parties hereto and thereunder shall be determined and governed as to validity, interpretation, enforcement and effect, by the laws of the State of California. Without limiting the right of Lessor to bring any action or proceeding against Lessee in the courts of other jurisdictions, Lessee hereby irrevocably submits to the jurisdiction of any State or Federal court located in California or in any other state where Lessor has an office. Lessor and Lessee expressly waive any right to a trial by Jury.

**17. Indemnity:** Lessee shall indemnify Lessor against any claims, actions, damages, or liabilities, including all attorney fees, arising out of or connected with Equipment, without limitation. Such indemnification shall survive the expiration, cancellation, or termination of this lease. Lessee waives any immunity Lessee may have under any industrial insurance act, with regard to indemnification of Lessor.

**18. Miscellaneous:** During the term of this Agreement, and any renewal hereof, you agree to provide us with all financial statements and copies of federal or state tax returns as we may reasonably request. If we supply you with labels, you shall label all items of Equipment and shall keep the same affixed in a prominent place. At Lessor's sole discretion and election, Lessor reserves the right to install a Telematics System (TS) into the Vehicle. In the event Lessor installs TS into the Vehicle, the TS shall not be removed from the Vehicle without Lessor's prior written consent. At all relevant times, the TS shall remain Lessor's property. If any provision hereof or any remedy herein provided is found to be invalid under any applicable law, such provisions shall be inapplicable and deemed omitted, but the remaining provisions hereof, including remaining default remedies, shall be given effect in accordance with the manifest intent hereof. You agree that any delay or failure to enforce our rights under this Agreement does not prevent us from enforcing any rights at a later time. You agree that the terms and conditions indicated above and on the first page are a complete and exclusive statement of our agreement and they may be modified only by written agreement signed by all of the parties hereto and not by course of performance. You agree that the microfilm or electronic duplication may be introduced in lieu of the original thereof and without further foundation. The parties hereto expressly waive the secondary evidence rule. You acknowledge receipt of a copy of this Agreement. This Agreement will be binding upon your successors, assigns, heirs, and legal representative. If your signature on any financing statement is required by law, you shall execute such supplemental instruments and financing statements we deem to be necessary and advisable and shall otherwise cooperate to defend our title by filing or otherwise. You agree that our waiver of any provision hereunder shall not constitute a waiver of any other matter. It is the express intent of the parties not to violate any applicable usury laws or to exceed the maximum amount of time price differential or interest, as applicable, permitted to be charged or collected by applicable law, and if any such excess payment will be applied to payments in inverse order of maturity, and any remaining excess will be refunded you.

**19. Irrevocable Limited Power of Attorney:** Lessee does hereby irrevocably appoint Lessor and/or its assigns the true and lawful Attorney-in-Fact coupled with and interest with full authority and power to do and perform all and every act and thing whatsoever requisite and necessary to be done in the premises, as fully, to all intent and purposes as Lessee might or could do if personally present, with full power of substitution and revocation, to complete, sign, execute, file and deliver any title, registration or certificate of ownership, UCC financing statements, and to sell, lease, record interest, transfer interest otherwise dispose of the Vehicle leased by Lessee and which is financed by, assigned as collateral security to, or in which a security interest has been granted to Lessor and/or its assigns. You further grant to us a limited power of attorney to endorse, negotiate, or cash any insurance payment or claim for application to our indebtedness to you. Lessor and/or its assigns may apply the proceeds from any such sale, lease or other disposition against any and all obligations of the Lessees to Lessor and/or its assigns. You hereby authorize us and appoint us as your attorney-in-fact with the power of attorney to file this Agreement, any financing statement(s) or security agreement(s) with respect to the Equipment or any other collateral you provide to us in any state in the United States. You further authorize us to file this Agreement and such financing statements, security agreements and title or registration documents without your signature thereon in reliance on this Power of Attorney.

**20. Cross Collateral:**
To secure the payment and performance of each and every debt, liability and obligation of every type and description which Lessee may now or at any time hereafter owe to Fleet Financing Resources LLC d/b/a A-Z Resources, LLC ("Lessor") (whether such debt, liability or obligation now exists or is hereafter created, acquired or incurred, arises out of a lease, installment sale contract or loan, swap, derivative, foreign exchange, hedge or other similar agreement, whether or not it is currently contemplated by the Lessee and Lessor, whether or not any documents evidencing it refer to this Vehicle Lease Agreement, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, joint, several or joint and several, and all costs and expenses incurred by Lessor to obtain, preserve, perfect and enforce the security interest granted herein and to maintain, preserve and collect the property subject to the security interest; all such debts, liabilities and obligations being herein collectively referred to as the "Obligations"). Lessee hereby grants to Lessor a first-priority security interest in all of the following property:

Equipment: Four (4) 2015 IC School Buses VIN: 4DRBUAAN4FB032519, 4DRBUAAN0FB032520, 4DRBUAAN2FB032521, 4DRBUAAN4FB032522 and Pledged Collateral 2008 IC School Bus VIN 4DRBUAAN5BB549575 and 2007 IC School Bus VIN 4DRBUAAN7B358185

together with all substitutions, replacements, parts, accessories, supplies, improvements, additions and accessions now or hereafter affixed thereto or used in connection therewith, and all proceeds and products thereof (referred to collectively as the "Collateral" and individually as an "Item"), and all books and records of Lessee pertaining to the Collateral. After Lessee signs this Vehicle Lease Agreement, Lessee authorizes Lessor to insert any missing information or change any inaccurate information (such as the model year of the Collateral or its serial number or VIN) into this description of Collateral.

**21. Cross Default:**
Each of the following events shall constitute an "Event of Default":
(i) Lessee or any guarantor shall be in breach of or in default in the payment or performance of any material obligation under any credit agreement, conditional sales contract, lease or other contract, howsoever arising;
(ii) an event of default shall occur under any other obligation Lessee or guarantor owes to Lessor;
(iii) an event of default shall occur under any indebtedness Lessee may now or hereafter owe to any affiliate of Lessor


Initial

Page 3 of 3

**FLEET FINANCING RESOURCES, LLC.**

· *10370 Hemet St., Suite 350 · Riverside CA 92503 · Tel (800) 421-3660 · Fax (951) 710-1016 · www.ffresources.com ·*

Agreement # 103851
Date 09/22/15

# Supplement to Agreement

This is a Supplement to the Agreement identified above between Lessor and Lessee (the agreement"). Upon the execution and delivery by Lessor and Lessee of the Supplement, Lessor hereby agrees to lease the Equipment described below upon the terms and conditions of this Supplement and the Agreement. All terms and conditions of the Agreement shall remain in full force and in effect except to the extent modified by this Supplement.

### Equipment Description:

| Description | VIN |
|---|---|
| Four (4) 2015 IC School Buses | 4DRBUAAN4FB032519 |
|  | 4DRBUAAN0FB032520 |
|  | 4DRBUAAN2FB032521 |
|  | 4DRBUAAN4FB032522 |

SCHEDULE OF MONTHLY PAYMENTS/INSTALLMENTS, PER SCHEDULE:

Successive Monthly Payments/Installments in the amounts shown below shall be due as per paragraph three of the Terms and Conditions of the Vehicle Lease Agreement

| | | |
|---|---|---|
| 1 | Payments / Installments @ | $65,800.00 |
| 9 | Payments / Installments @ | $12,325.00 |
| 2 | Payments / Installments @ | $ 3,000.00 |
| 10 | Payments / Installments @ | $12,325.00 |
| 2 | Payments / Installments @ | $ 3,000.00 |
| 10 | Payments / Installments @ | $12,325.00 |
| 2 | Payments / Installments @ | $ 3,000.00 |
| 10 | Payments / Installments @ | $12,325.00 |
| 2 | Payments / Installments @ | $ 3,000.00 |
| 7 | Payments / Installments @ | $12,325.00 |

Lessee hereby verifies the above as true and correct and acknowledges receipt of a copy hereof.

Lessee: Allways East Transportation Inc.    Lessor: Fleet Financing Resources, LLC.

Signature _(signed)_    Signature _(signed)_

Name   Judith Koller    Name   James M. K__

Title   President    Title   Dir of Ops



· *10370 Hemet St., Suite 350 · Riverside CA 92503 · Tel (800) 421-3660 · Fax (951) 710-1016 · www.ffresources.com ·*

Agreement # 103861
Date 09/22/15

# TRAC ADDENDUM

This TRAC Addendum dated this 09/22/15 amends and supplements the terms and conditions of that certain Vehicle Lease Agreement ("Lease") (no.103861) entered into by and between the Lessee identified below and Fleet Financing Resources, LLC. ("Lessor"). Unless otherwise defined herein, terms in the Lease shall have the same meaning when used herein.

**1) DEFINITIONS:**

a) "Estimated Residual Value" shall mean  $25,600.00  .

b) "Actual Residual Value" shall mean the purchase price actually received by Lessor after deducting all reasonable selling and advertising expenses.

c) "Termination Date" shall mean the scheduled expiration date of the lease.

**2) TERMINAL RENTAL ADJUSTMENT CLAUSE:**

a) During the 60-day period prior to the Termination Date, Lessee may market the Vehicle(s) and solicit prospective parties for the purchase of the Vehicle(s). Lessor shall review any offers to purchase the Vehicle(s) from prospective purchasers, including an offer from Lessee.

b) If an offer to purchase the Vehicle(s) is accepted by Lessor, then the Vehicle(s) shall be sold by Lessor to the highest bidder within ten (10) days after the Termination Date and the Actual Residual Value shall be equal the purchase price actually received by Lessor after deducting all reasonable selling and marketing expenses.

c) If the Actual Residual Value is less than the Estimated Residual Value, then Lessee shall pay such deficiency to Lessor on the Termination Date and shall have no further rights to the Vehicle(s).

d) If the Actual Residual Value equals or exceeds the Estimated Residual Value, then (i) Lessor shall retain the Estimated Residual Value and (ii) Lessor shall pay the excess amount (less all reasonable selling and marketing expenses) to Lessee on the later of the Termination Date or ten (10) days after any sale by Lessor of the Vehicle(s) subsequent to the Termination Date.

e) If no offer is received, or if no offer to purchase the Vehicle(s) is accepted by Lessor or if the Vehicle(s) is not sold for any reason, then the Actual Residual Value shall be deemed to be zero (0) and the Lessee shall be deemed the purchaser and shall pay the Estimated Residual Value to Lessor.

f) Lessor shall, upon receipt of the purchase price of the Vehicle(s), convey title to the Vehicle(s) to the purchaser by a bill of sale, which transfer shall be "AS-IS, WHERE IS", with all faults, without recourse to Lessor and without any representation or warranty of any kind whatsoever by Lessor, express or implied.

1

3) **GENERAL:**

a) If an event of default occurs and is continuing under the Lease, the failure by Lessee to perform or observe any other term, covenant, or condition of the Vehicle Lease Agreement, which is not cured within 5 days of receipt of notice thereof from Lessor or Assignee, then: Lessor shall have all the rights and remedies provided by the Lease, and this Addendum; Lessor shall have no duty or obligation to pay any excess amount to Lessee under Section 2 of this Addendum; and Lessor shall account for the proceeds of any disposition of the Vehicle(s) only as set forth in the Lease.

b) Except as expressly amended by this Addendum, all terms and conditions, of the Lease shall remain in full force and effect including, without limitation, Lessee's obligations with respect to the return of the Vehicle(s) at the end of the Lease term.

c) Lessee has been advised that Lessee will not be treated as the owner of the Vehicle(s) for federal income tax purposes.

d) Lessee agrees that if any fine, penalty or other assessment is levied or assessed against any of the Vehicles(s) (a "Levy"), the Lessee shall pay the amount of any Levy immediately upon notice thereof. If payment of any Levy is sought from Lessor or if nonpayment of any Levy may involve the seizure, forfeiture of loss of any Vehicle(s), then, Lessor may pay, but shall not be obligated to pay, the amount of such Levy. Lessee waives notice of any such Levy prior to Lessor's payment thereof, and Lessee agrees to reimburse Lessor any amount paid by Lessor in connection therewith immediately upon Lessor's request.

| | | | |
|---|---|---|---|
| Lessee: | Allways East Transportation Inc. | Lessor: | Fleet Financing Resources, LLC. |
| By: | [signature] | By: | [signature] |
| Print: | Judith Koller | Print: | James M. Ky |
| Title: | President | Title: | Dir of Op |

2