UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:

ALLWAYS EAST TRANSPORTATION INC.,

                              Debtor.

------------------------------------------------------------X

Chapter 11
Case No. 16-22589 (RDD)

**ORDER (I) AUTHORIZING THE SALE OF CERTAIN OF THE DEBTOR'S ASSETS CONSISTING OF CERTAIN CUSTOMER CONTRACTS AND VEHICLES FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (II) GRANTING THE SUCCESSFUL BIDDERS GOOD FAITH PURCHASER STATUS, (III) WAIVING THE FOURTEEN-DAY STAY OF SALE ORDER, AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[1] of Allways East Transportation Inc., the the debtor and debtor in possession in this Chapter 11 case (the "Debtor"), by its attorneys, DelBello Donnellan Weingarten Wise & Wiederkehr, LLP, seeking *inter alia* entry of an order (i) establishing bidding procedures to govern the sale of certain of the Debtor's assets, including but not limited to customer contracts and vehicles (collectively, the "Assets"), (ii) approving a Break-Up Fee to the Debtor's stalking horse(s), (iii) scheduling an auction to sell the Properties, subject to higher and better bids (the "Auction"), and (iv) scheduling a hearing to approve the Sale of the Assets in accordance with the Auction (the "Sale Hearing"); and upon the record of the hearing held on the Motion on January 9, 2017 (the "Sale Procedures Hearing"); and the Court having entered an Order on January 13, 2017 granting the interim relief sought in the Motion [ECF Docket No. 190] (the "Bidding Procedures Order"); and the Auction having been conducted on February 15, 2017 in accordance with the Bidding Procedures Order; and the Debtor having filed a Notice and Report of Auction dated February 17, 2017 [ECF No. 228] (the "Auction Report"); and, on due and sufficient notice, the Court having conducted the Sale Hearing on February 23, 2017 to confirm the results of the Auction (the "Sale Hearing"); and all parties-in-interest having been

---
[1] Capitalized terms used herein not otherwise defined shall have the meaning ascribed to them in the Motion.

heard, or having had the opportunity to be heard at the Sale Hearing; the Court having reviewed and considered the Motion and Auction Report, respectively, and the arguments of counsel made, and the evidence adduced, and upon the representations made on the record at the Bidding Procedures Hearing and the Sale Hearing, respectively; upon the record of the Bidding Procedures Hearing and the Sale Hearing and this Chapter 11 case; and after due deliberation thereon, and good cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:[2]**

A.   This Court has jurisdiction over the Motion and the sale of the Assets pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).

B.   Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), which the Court may decide by final order.

C.   The statutory predicates for the relief sought in the Motion are Sections 105(a), 363(b), (f) and (m), 365, 503, and 507 of the United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq., as amended (the "Bankruptcy Code"), Rules 2002(a)(2), 6004(a), (b), (c), (e), (f) and (h) and 6006(a) and (d), 9007 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 6004-1 and 6006-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

D.   Based upon the affidavits of service filed with the Court [ECF Nos. 180, 188(1) and 197), (i) notice of the Motion, the Sale Procedures Hearing, the Sale Hearing and the Auction of the Assets was adequate and proper under the circumstances of this Chapter 11 case, (ii) the Debtor has complied with the applicable requirements of the Bankruptcy Code, the Bankruptcy Rules and the Bidding Procedures Order with respect to the Motion and the sale of the Assets, (iii) all parties in interest have had a reasonable opportunity to object and be heard

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

with respect to the Motion and the relief requested and (iv) no further or other notice beyond that described in the foregoing is required in connection with the Motion.

E.  The Debtor extensively marketed the Properties and conducted an open and robust Auction. Creditors, parties-in-interest, and other entities who may have been interested in bidding on the Properties have been afforded a reasonable opportunity to bid at the Auction. There are no objections the Motion that have not been resolved or are not being resolved as set forth herein.

F.  The Bidding Procedures were substantively and procedurally fair to all parties and all potential bidders. The Debtor undertook substantial marketing efforts, and conducted the sale process without collusion and in accordance with the Bidding Procedures Order. The Debtor (i) afforded interested potential purchasers a full, fair and reasonable opportunity to qualify as bidders and submit their highest or otherwise best offer to purchase the Assets, and (ii) provided potential purchasers, upon request, sufficient information to enable them to make an informed judgment on whether to bid on the Assets.

G.  Corporate Transportation Group, Ltd. ("CTG") did not enter into an Asset Purchase Agreement by the deadline set forth in the Letter of Intent annexed to the Motion, did not submit a deposit and did not qualify as a bidder under any other means provided under the terms of the Sale Procedures Order.

H.  As set forth in the Auction Report, five (5) qualified bidders attended the Auction and the Auction was conducted in accordance with the Sale Procedures Order. There were twelve (12) rounds of bidding and the following rounds[3] and the following highest and best bids were declared by the Debtor at the Auction in the following amounts:

---

[3] The rounds not reflected herein were rounds in which no bids were received for the related Asset. See Report of Auction for further detail, which is specifically incorporated herein by reference.

3

1. Round 1 – *Dutchess County Contract and Buyout of vehicles leased ("Merchants Leased Buses") to the Debtor by Merchants Automotive Group, Inc. ("Merchants"):* Highest and Best Bid of **MAT Bus Corp.** ("MAT") in the amount of $1,425,000[4] and the bid of **We Business Management, Inc.** ("We" or "Back-Up Bidder) in the amount of $1,400,000 being declared the second highest bid and the Back-Up Bid;

2. Round 4: *Rye City Service Purchase Order ("Rye PO"):* Highest and Best Bid of **Phoenix Transportation Services Inc.**[5] ("Phoenix") in the amount of $5,000;

3. Round 6: *Vehicles financed to the Debtor by Advantage Funding ("Advantage Vehicles")*:

    a. Highest and Best Bid of **Phoenix** in the amount of $30,000 for (1) 2012 Ford Coach, VIN No. ending 0577;

    b. Highest and Best Bid of **Logan Bus Co., Inc.** ("Logan") in the amount of $352,500 (of which $350,000 will be paid directly to Advantage and $2,500 to be paid directly to the estate) for (15) Chevrolet and Ford Vehicles, VIN Nos. ending in 5613, 1709, 0111, 0047, 0038, 0040, 0037, 0043, 0041, 0042, 0046, 0044, 0045, 0072, 0077;

    c. Highest and Best Bid (Credit Bid) of **Advantage Funding** ("Advantage") in the amount off $155,100 for (7) Ford Vehicles, VIN Nos. ending in 0777, 6054, 5999, 5571, 5612, 3075 and 2838;

4. Round 7: *Marc Motors Leased Vehicles ("Marc Motors Vehicles"):* Highest and Best Bid of **Phoenix** in the amount of $227,000 for the purchase of all five (5) leased vehicles;

5. Round 8: *Debtor Owned Vehicles:*
    a. Highest and Best Bid of **Logan** in the amount of $111,964 for fifty-three (53) vehicles, VIN Nos. ending in 1718, 7976, 6643, 8403, 5609, 2488, 2199, 6193, 5607, 6534, 5604, 5605, 5606, 5608, 1762, 1694, 2985, 1746, 3912, 3121, 3282, 3833, 3771, 6649, 4405, 4058, 2119, 9024, 4772, 6672, 2417, 2759, 2890, 4711, 1414, 2336, 5694, 3837, 3759, 2577, 5159, 6548, 9297, 9298, 8885, 3006, 9576, 9606, 9371, 8078, 9465, 8182, and 9575;

---

[4] It was disclosed on the record at the Auction that upon approval of this Sale Order, MAT will enter into a consulting agreement and non-compete with Marlaina Koller, such agreement being a condition of its bid.
[5] Marlaina Koller, vice president of the Debtor, has an ownership interest in Phoenix which was disclosed in the Phoenix bidder registration and again on the record at the Auction. Phoenix was represented by separate counsel at the Auction.

    b. Highest and Best Bid of **Phoenix** in the amount of $66,000 for eighteen (18) vehicles, VIN Nos. ending in 5717, 9902, 0513, 1730, 9593, 0578, 0511, 0633, 9928, 0205, 5962, 6279, 9370, 8181, 3654, 0750, 0449, and 9951; and

    c. Highest and Best Bid of **Logan** for ten (10) vehicles in the amount of $143,000 for VIN Nos. ending in 0076, 0073, 0551, 5532, 0589, 0107, 0182, 5318, 0408, and 0212.

6. <u>Round 12</u>: *Nations Fund Lease:* the Highest and Best Bid of **Phoenix** in the amount of $5,000 in exchange for the assignment of the Nations Fund Lease (all of the assets successfully purchased at Auction, hereafter, the "<u>Assets</u>"). "Nations Fund Lease" as used herein refers to the Master Lease Agreement previously assumed by the Debtor pursuant to an Order of the Court dated November 22, 2016 [doc. no. 161]

I. The Successful Bidders and Back-Up Bidder, with the exception of Phoenix, are not insiders and, including Phoenix, are good faith purchasers under Section 363(m) of the Bankruptcy Code and, as such, are entitled to all of the protections afforded thereunder.

J. Neither the Debtor nor the Successful Bidders and Back-Up Bidder engaged in any conduct that would cause or permit the consummation of the respective sales to be avoided or costs or damages to be imposed under Section 363(n) of the Bankruptcy Code, or have otherwise acted in any improper or collusive manner with any person.

K. The total consideration provided for the Assets is fair and reasonable and is the highest and best offer received by the Debtor, and constitutes reasonably equivalent value under the Bankruptcy Code.

L. The transfer of the Debtor's right, title and interest in the Assets to the applicable purchaser in accordance with the results of the Auction ("<u>Purchaser(s)</u>") will be a legal, valid, enforceable, and effective transfer of such Assets, and will vest the respective Purchasers with all of the Debtor's right, title and interest of, in and to such Assets, free and clear of all liens, claims, encumbrances and interests of any kind (including, without limitation, those of all federal, State and local taxing authorities), whether arising prior to or as a consequence of or subsequent to the commencement of the Chapter 11 case, whether arising in connection with the sale as authorized by this Order, whether imposed by agreement, understanding, law, equity or otherwise, whether

secured or unsecured, known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or non-material, disputed or undisputed, except to the extent expressly set forth in the applicable purchase agreement (collectively, the "Liens and Claims").

M. The Debtor may sell the Assets free and clear of all Liens and Claims, as set forth in this Order, because, with respect to each creditor asserting such Liens and Claims, one or more of the standards set forth in Sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. The holders of Liens and Claims received adequate notice, did not object and are deemed to have consented to the Motion and the sale of the Assets pursuant to Section 363(f)(2) of the Bankruptcy Code, subject to the terms set forth herein.

N. Sale of the Assets to the Successful Bidders and, if applicable, the Back-Up Bidder, constitutes in each case a good and sufficient exercise by the Debtor of sound business judgment, and such acts are in the best interests of the Debtor, its estate and creditors, and all parties in interest.

Now, therefore, it is hereby

**ORDERED ADJUDGED AND DECREED THAT:**

1. The relief requested in the Motion is **GRANTED,** as set forth herein.

2. Notice of the Sale Hearing was sufficient, fair and equitable under the circumstances and complied in all respects with the Sale Procedures Order, the Bankruptcy Code and Bankruptcy Rules.

3. The sale of the Assets to the Successful Bidders or to the Back-Up Bidder, if necessary, is hereby approved and each Successful Bidder is directed to close on the sale of the Assets that it agreed at the Auction to purchase on or before February 28, 2017 (the "Closing"), *time being of the essence*. Each sale to each of the Successful Bidders, or to the Back-Up Bidder, if necessary, shall be deemed a separate and distinct sale transaction. Debtor's counsel shall provide a bill of sale for review and comment by the respective Successful Bidders by no later

than 5:00 p.m. (Eastern) February 24, 2017. If the Back-Up Bidder is deemed the Purchaser, the Debtor and the Back-Up Bidder must close by March 3, 2017. In the event that the Debtor fails to close by March 3, 2017, the Back-Up Bidder may cancel the agreement and Debtor's counsel shall promptly return the deposit in the sum of $150,000.00 to the Back-Up Bidder.

    4.    Pursuant to Sections 105(a) and 363(f) of the Bankruptcy Code, upon Closing, the Debtor shall convey the Assets to the applicable Purchaser, or such entity designated by such Purchaser prior to the Closing, free and clear of all Liens and Claims, with all such Liens and Claims to attach to the proceeds of the sale in the order of their priority and with the same validity, force and effect as of they existed immediately before the Closing against such Assets, subject to any claims and defenses the Debtor, any affiliate, or related party may possess with respect thereto. Subject to the applicable Closing, all Liens and Claims on such Assets shall be and hereby are deemed released, terminated and discharged as to such Assets and all holders of such Liens and Claims shall forever be barred, estopped and permanently enjoined from asserting such Liens and Claims against the respective Purchaser (inclusive of any assignee of Purchaser who shall receive title to such Assets from the Debtor at Closing) or any of their real or personal property, including but not limited to the applicable Assets. For the avoidance of doubt and in addition to the release of Liens and Claims, all claims against, and encumbrances upon and in connection with the Assets are hereby, effective upon the applicable Closing, void and of no further force and effect, including without limitation, claims of successor liability, except as they shall attached to the sale proceeds of such Assets under this paragraph.

    5.    All Assets are being conveyed to the respective Purchasers AS-IS, WHERE-IS, without any representations, warranties or guaranties of any kind, except as to the following:

    (i)    with respect to the sale of the vehicles financed by Advantage Funding to Logan, the Debtor has represented that the vehicles will be transferred with valid DOT permits, keys and registrations (including, for the avoidance of doubt, all titles, 300 forms, and maintenance records); and

    (ii)    with respect to the vehicles owned by the Debtor and sold to Logan, the Debtor has represented that the Vehicles are intact and have not been

disassembled in any material way for use of spare automotive parts, and will be transferred with valid DOT permits, keys and registrations (including, for the avoidance of doubt, all titles, 300 forms, and maintenance records); and

(iii) with respect to the sale of the vehicles (leased by Merchants to the Debtor) to MAT, or to the Back-up Bidder, if necessary, the Debtor has represented that the vehicles will be transferred with valid DOT permits, keys and registrations and that they are in good working order.

6. The sale of the Dutchess County Contract to the Back-Up Bidder, if applicable, is subject to WE being approved by Dutchess County with a one (1) year extension of the existing contract through 2018.

7. Subject to Paragraph 5 hereinabove, the Debtor and Allways North Transportation, a non-Debtor affiliate that is the named vendor under the Dutchess County Contract, are authorized to assume and assign, pursuant to Section 365 of the Bankruptcy Code and otherwise under law, the Dutchess County Contract to MAT, and the Debtor is also authorized to assign, or assume and assign, as applicable, pursuant to Section 365 of the Bankruptcy Code, the Rye PO and the Nations Fund Lease to Phoenix, upon receipt of the respective amounts set forth in paragraph H above. No cure amount under Section 365 of the Bankruptcy Code or otherwise is due under the Dutchess County Contract, the Rye PO, or the Nations Fund Lease (collectively, the "Contracts"). Moreover, the Debtor acknowledges that Dutchess County has consented to the Debtor's and Allways North's assignment of the Dutchess County Contract to MAT, including through the 2018 contract period, all as more fully set forth in the Dutchess County Contract. Upon the assignment of the Contracts to the respective assignees, the applicable assignees shall assume all of the benefits and burdens of the respective Contracts arising as of the Closing on same. For the avoidance of doubt, nothing in this Order shall be construed to affect or impair the validity of any obligations of any non-Debtor parties in respect of the Contracts.

8. Consistent with Section 365(b)(1)(c) of the Bankruptcy Code, the authorization granted under this Order for the assignment of the Nations Fund Lease to Phoenix shall be conditioned upon: (a) the prior or simultaneous assignment to Phoenix of the Rye PO, (b) receipt

by Nations of documentation or other writing, evidencing the existence of a valid and binding contract between Phoenix and SAR Academy, Riverdale, New York, and (c) the existence of appropriate factoring arrangements in respect of Phoenix's receivables that are reasonably satisfactory to Nations.

9. Upon entry of this Order, all of the Debtor's prepetition unexpired leases or executory with Goosetown Enterprises Inc., Fleet Financing Resources, Cannon Financial Services, Freedom Financial Consulting Inc. and Noonan Leasing LLC are each hereby deemed rejected, and such lessors shall be permitted to recover their equipment from the Debtor's premises on March 1, 2017, except as provided in Paragraph 11 herein; however, with respect to Freedom Financial Consulting Inc., Freedom Financial Consulting Inc. is permitted to recover its vehicles prior to March 1, 2017 and as further set forth in this Court's Order Granting Conditional Relief from the Automatic Stay [Docket No. 177] and Order Granting Relief from the Automatic Stay pursuant to 11 U.S.C. § 362(d) and Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure [Docket No. 202].

10. MAT is hereby authorized to wire transfer the sum of $1,295,483.52 as the requisite payoff amount for the purchased vehicles through February 28, 2017 (the "Payoff Amount"). In the event that MAT fails to timely wire such requisite payoff amount to Merchants on or before February 28, 2017, MAT shall pay a *per diem* of $44.52 for each day thereafter. Upon receipt of the Payoff amount by Merchants, Merchants shall deliver all certificates of title for the 62 buses currently leased to the Debtor to MAT together with all certificates of title for vehicles owned by the Debtor which Merchants is currently in possession of, together with all documentation necessary to remove any and all liens of record with the New York State Department of Motor Vehicles. The foregoing payment to Merchants shall in no way be deemed an admission by the Debtor of the cure amount due, and all parties shall be deemed to have reserved their rights with respect to same. Merchants shall cooperate with the Debtor and MAT to obtain, and it shall provide any additional documentation necessary to convey, the Debtor's Owned Buses on which Merchants has a lien by virtue of the DIP Loan.

11. The Debtor shall be responsible for removal, assembly and turnover of all Goosetown leased equipment to Goosetown on or before February 26, 2017, by making such equipment available for pick up by Goosetown at the Debtor's Fishkill location.

12. Upon receipt of $350,000 by Advantage from Logan and $30,000 from Phoenix, Advantage shall deliver with respect to the vehicles set forth in H.3.a and H.3.b. above to Logan and Phoenix, as applicable, all documents necessary to remove any and all liens of record with the New York State Department of Motor Vehicles. Advantage shall cooperate with the Debtor, Logan and Phoenix to obtain any additional documentation necessary to convey the Advantage Vehicles free and clear of any and all liens of Advantage.

13. Upon receipt of the $225,876.16, Marc Motors shall deliver Certificates of Title for all of the Marc Motors Leased Vehicles set forth in H.4. in the form sufficient to enable the Debtor to convey title to Phoenix. Advantage shall cooperate with the Debtor and Phoenix to obtain any additional documentation necessary to convey the Marc Motors Vehicles.

14. All sale proceeds not authorized to be paid directly to the parties as specifically set forth hereinabove shall be maintained in the Debtor's counsel's escrow account and distribution thereof shall be subject to further order of the Court.

15. The Purchasers have participated in the Auction and the sale process in good faith and the Purchasers are good faith purchasers of the Assets as that term is used in Section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the respective sales shall not affect the validity of such sales. The Purchasers are entitled to all of the protections afforded by Section 363(m) of the Bankruptcy Code.

16. Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the Debtor and the Purchasers are each hereby authorized and the Debtor is hereby directed, without the need for any further Order of the Court, to take any and all actions necessary or appropriate to: (a) consummate the sale of the Assets in accordance with the Motion and this Order, and (b)

perform, consummate, implement and close on the respective sales of the Assets together with all additional instruments and documents that may be reasonably necessary to accomplish same.

17. The consideration provided by each of the Purchasers for their respective purchased Assets shall be deemed for all purposes to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law, and the respective sales may not be avoided, or costs or damages imposed or awarded, under Section 363(n) of the Bankruptcy Code or any other provision of the Bankruptcy Code or any other applicable state laws.

18. Subject to the respective Closings, this Order (a) is and shall be effective as a determination that, all Liens and Claims of any kind or nature whatsoever existing as to the Assets prior to such Closing have been unconditionally released, discharged and terminated except as provided in this Order as to the sale proceeds, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and shall authorize all entities, including all filing agents, filing officers, title agents, title companies, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Assets conveyed to the Purchasers. Subject to the respective Closings, all such entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens and Claims against the Assets from their records, official and otherwise.

19. CTG shall not be entitled to the Break-Up Fee.

20. In the event that any Purchaser fails to close on the sale of any of the Assets in accordance with the terms of this Order, through no fault of the Debtor, such particular Purchaser's deposit shall be forfeited to the Debtor's estate, without the need for further Order of this Court, and such Purchaser shall waive any and all rights to object to or otherwise seek

recovery of said forfeited deposit or assert any other claims, rights or interests against or to the Debtor, the Assets or the Debtor's estate.

21. MAT, in consideration for having advanced the Debtor one (1) week's payroll for its drivers who service the Dutchess County Contract, which advance was necessary to preserve the Debtor's interest in such contract and thereby the sale to MAT contemplated herein, shall be entitled to a $40,000 credit against the purchase price described in H.1. above. In the event that MAT does not close on the purchase of the Dutchess County Contract for any reason, MAT shall have a superpriority administrative expense claim in the Debtor's Chapter 11 case up to the amount of $40,000 (if otherwise unpaid by the Debtor) pursuant to Section 364(c)(1) of the Bankruptcy Code superior to all other superpriority claims in this case.

22. To the extent this Order is inconsistent with any prior order or pleading in this Chapter 11 case, the terms of this Order shall govern.

23. The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order, including the authority to: (a) interpret, implement and enforce the terms and provisions of this Order (including the injunctive relief provided in this Order) and the ancillary agreements contemplated thereby, all amendments thereto and any waivers and consents thereunder; (b) protect the Purchasers, and the Assets, from and against any Liens and Claims; (c) compel delivery of the respective Assets to the respective Purchasers; (d) compel the Purchasers and the Debtor to perform all of their obligations hereunder; (e) resolve any disputes arising under or related to the sales; and (f) provide any further relief that is necessary or appropriate in furtherance of this Order or the sales.

24. Notwithstanding any provision in the Bankruptcy Rules or the Local Bankruptcy Rules to the contrary, sufficient cause having been established (a) the terms of this Order shall be immediately effective and enforceable upon its entry, (b) the Debtor and the Purchasers are not subject to any stay, including without limitation the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d), in the implementation, enforcement or realization of the relief granted in

this Order, and (c) the Debtor may, in its discretion and without further delay, take any action and perform any act authorized under this Order.

25. This Order shall be binding upon (a) any successor of the Debtor and (b) any trustee appointed in this or any subsequent bankruptcy case of the Debtor.

26  This Order is deemed to be a separate order with respect to each sale to each Purchaser authorized and approved hereby

Dated: February 27, 2017
      White Plains, New York

                                  /s/Robert D. Drain
                                  HONORABLE ROBERT D. DRAIN
                                  UNITED STATES BANKRUPTCY COURT