ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel: (212) 682-4940
Jeffrey Traurig
Email*:*  jtraurig@archerlaw.com

*Proposed Special Litigation Counsel for Howard P. Magaliff*
*Chapter 7 Trustee of Allways East Transportation, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 7 |
| ALLWAYS EAST TRANSPORTATION, INC., | Case No. 16-22589 (RDD) |
| Debtor. | |

-------------------------------------------------------------------x

| | |
|---|---|
| HOWARD P. MAGALIFF, Chapter 7 Trustee of ALLWAYS EAST TRANSPORTATION, INC., | Adv. Pro. No. - |
| Plaintiff, | |
| v. | |
| HARRAH'S ATLANTIC CITY OPERATING COMPANY, LLC, | |
| Defendant. | |

-------------------------------------------------------------------x

## **COMPLAINT**

Howard P. Magaliff, as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the bankruptcy estate of ALLWAYS EAST TRANSPORTATION, INC. (the "Debtor"), by and through his undersigned counsel, Archer & Greiner, P.C., for his complaint (the "Complaint") against HARRAH'S ATLANTIC CITY OPERATING COMPANY, LLC (the "Defendant"), respectfully alleges as follows:

## NATURE OF THIS ACTION

1. This proceeding is brought on behalf of the Debtor's estate seeking judgment against the Defendant for the avoidance and recovery of fraudulent transfers to the Defendant. This proceeding also seeks an order expunging and disallowing any and all claims filed by the Defendant, if any, against the Debtor.

2. The Debtor was an owner and operator of a fleet of approximately 300 buses and other transport vehicles that provided transportation services for public and private schools, from pre-K through colleges and universities.

3. In the years preceding the commencement of the Debtor's bankruptcy case, the Debtor experienced significant cash flow shortages and, among other things, failed to pay its obligations as they became due.

4. At the same time, the Debtor's books and records were left in shambles requiring the Trustee's professionals to sift through limited financial documentation to understand the Debtor's financial picture and payments made to entities during the years preceding the bankruptcy case.

5. As a result of the efforts made by the Trustee's professionals, it became clear to the Trustee and his professionals that payments were made by the Debtor to benefit or satisfy personal obligations of the Debtor's insiders and others.

6. As set forth below, as of January 1, 2013, the Debtor was insolvent and continued to be insolvent through the Petition Date.

7. During the time of insolvency, the Debtor made payments to various parties, including the Defendant. The books and records provided to the Trustee do not reflect that the Debtor was responsible for the payments to the Defendant. The Debtor's books and

records also do not reflect that the Debtor received reasonably equivalent value for the payments to the Defendant.

8. Thus, at the time the Debtor was insolvent and/or as a consequence whereof the Debtor became insolvent, the Debtor caused or made transfers to the Defendant that are avoidable as fraudulent transfers.

9. This adversary proceeding seeks to avoid these transfers and recover the value for the benefit of the Debtor's estate and its creditors.

## PARTIES

### The Debtor and Trustee

10. The Debtor's principal place of business was New York state.

11. According to the *Declaration of Marlaina Koller Pursuant to Local Bankruptcy Rule 1007-2 in Support of Debtor's Chapter 11 Petition*, filed with the United States Bankruptcy Court for the Southern District of the New York (the "Court"), the Debtor operated from the following three leased premises (a) 870 Nepperhan Avenue, Yonkers, New York 10702, (b) 215 Lake Avenue, Yonkers, New York 10703, (c) 38 Route 9, Fishkill, New York, 12524.

12. On April 28, 2016 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York, Case No. 16-22639 (RDD).

13. By Motion dated, November 22, 2017, the Office of the United States Trustee (the "UST") sought entry of an order converting the Debtor's chapter 11 case to a case under chapter 7. In its motion, the UST alleged that the Debtor's operating reports revealed

evidence of gross mismanagement in the form of excessive cash withdrawals and multiple suspect Paypal transactions and payments to vendors such as Apple Itunes, GetRentToOwn.com, Outdoor Dogs and clothing stores on Ebay. Moreover, in its motion, the UST alleged that the Debtor was failing to fulfill its fiduciary duty to remit trust funds to the appropriate taxing authorities.

14. By Order dated December 7, 2017 [Docket No. 338], the Court granted the motion of the United States Trustee and converted the Debtor's chapter 11 case to a case under chapter 7 of the Bankruptcy Code.

15. The Trustee was appointed as the chapter 7 interim trustee of the Debtor on December 12, 2017, and has accepted his appointment, duly qualified and is acting as the trustee.

**The Defendant**

16. Upon information and belief, the Defendant is a New Jersey limited liabaility company with a registered agent of Corporation Service Company, 830 Bear Tavern Road, Suite 305, Trenton, New Jersey 08625-1020.

**JURISDICTION AND VENUE**

17. This Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157, 1331 and 1334.

18. This adversary proceeding is brought pursuant to, *inter alia*, sections 544, 548 and 550 of the Bankruptcy Code and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

19. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

20. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409.

21. Pursuant to Rule 7008 of the Bankruptcy Rules, the Trustee consents to the entry of final orders or judgment by this Court.

## FACTUAL BACKGROUND

### The Debtor's Insolvency

22. At least as early as January 1, 2013, the Debtor was insolvent.

23. At least as early as January 1, 2013, the Debtor was not paying all of its bills and invoices as they came due.

24. As of the Petition Date, according to the Debtor's schedule of assets and liabilities filed with the Court [Docket No. 46], the Debtor's assets were $3,127,052.10 with liabilities of $8,979,596.28.

25. According to the Debtor's statement of financial affairs filed with the Court on July 22, 2016, as of the Petition Date, nine court cases were pending against the Debtor, with certain cases dating back to 2012.

26. The Debtor's claims register reflects more than $23 million of claims were filed against the Debtor.

27. As such, the Debtor's books and records grossly understated the true financial woes of the Debtor.

28. The Debtor's insolvency and failure to pay its obligations as they became due was an ongoing problem for years before the Petition Date.

29. Upon information and belief, any capital the Debtor did have at the end of 2012 was not adequate to operate the business at the time.

30. Nevertheless, the Debtor sought to expand its business in or about 2012 and left itself without the ability to satisfy its ongoing obligations.

31. For instance, the Debtor failed to pay an insurance premium to Seneca Insurance Company in 2012.

32. The failure to pay the insurance premium resulted in the policy being cancelled and a lawsuit being commenced against the Debtor.

33. The Debtor also defaulted on a settlement agreement with Hudson Valley Bank, N.A. resulting in one or more of the Debtor's bank accounts being restrained in August 2012.

34. According to the proof of claim filed by the Department of Treasury – Internal Revenue Service, the Debtor owed more than $64,000 on account of FICA taxes not paid for the third quarter of 2012.

35. The Debtor also failed to make lease payments under a master lease agreement with Nations Fund I, Inc. resulting in the termination of that agreement in 2014.

36. Notwithstanding the Debtor's financial woes and inability to satisfy its obligations as they became due, upon information and belief, the Debtor's insiders used the Debtor as a personal piggy bank deepening the debtor's insolvency and funneling money out of the Debtor's estate that could have been used to pay the Debtor's legitimate creditors during 2013 through the Petition Date.

37. A review of the Debtor's bank and financial records reflect that the Debtor made payments to, among other entities, casinos, family members and businesses, restaurants and entertainment that do not appear to have any connection to the Debtor's business and for which the Trustee has not been provided any documentation to show these were valid business expenses during 2013 through the Petition Date.

**The Transfers to the Defendant**

38. During the time the Debtor was insolvent, the Debtor made transfers in an aggregate amount of not less than $14,527.73, plus amounts that may be revealed in discovery (collectively, the "Fraudulent Transfers", individually a "Fraudulent Transfer") to the Defendant.

39. The Fraudulent Transfers are set forth on **Exhibit A** attached hereto and are incorporated herein by reference.

40. Based upon a review of the Debtor's books and records and documents provided to the Trustee, the Defendant was not a creditor of the Debtor.

41. The Defendant operates a casino in Atlantic City, New Jersey.

42. Based upon a review of the Debtor's books and records and documents provided to the Trustee, the Defendant did not utilize services of the Defendant.

43. Based upon a review of the Debtor's books and records and documents provided to the Trustee, the Fraudulent Transfers did not have a valid business purpose and were not obligations of the Debtor.

44. Upon information and belief, the Fraudulent Transfers were made for the benefit of or on account of obligations of insiders, or other non-debtor entities that were not obligations of the Debtor.

45. Based upon a review of the Debtor's books and records provided to the Trustee, the Debtor did not receive reasonably equivalent value from the Defendant for the Fraudulent Transfers.

**First Cause of Action**
**(Avoidance of Constructive Fraudulent Conveyances**
**Pursuant to 11 U.S.C. §§ 548(a)(1)(B))**

46. The Trustee repeats and realleges the allegations in the preceding

paragraphs of this Complaint as if fully set forth herein.

47. The Fraudulent Transfers were transfers of an interest of the Debtor in property.

48. As set forth on **Exhibit A,** the Fraudulent Transfers in the amount of $14,527.73 were made within two years prior to the Petition Date. The Fraudulent Transfers were made to or for the benefit of the Defendant.

49. To the extent that one or more of the Fraudulent Transfers were on account of an antecedent debt or were prepayments for goods and services subsequently received, the Debtor received less than reasonably equivalent value in exchange for the Transfers.

50. The Debtor (i) was insolvent on the dates of the Fraudulent Transfers or became insolvent as a result of the Fraudulent Transfers; or (ii) was engaged in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital at the time of, or as a result of the Fraudulent Transfers; or (iii) intended to incur, or believed that it would incur, debts beyond its ability to pay as such debts matured.

51. Upon information and belief, the Defendant may have received additional transfers beyond those set forth on **Exhibit A**, and the Trustee reserves his right to assert claims to recover such transfers.

52. Based upon the foregoing, the Fraudulent Transfers made by the Debtor to the Defendant constitute avoidable fraudulent transfers pursuant to 11 U.S.C. § 548(a), and the Trustee may recover from the Defendant, for the benefit of the Debtor's estate, the Fraudulent Transfers in such amounts as may be determined at trial, that are not less than the amounts of the Fraudulent Transfers as identified on the schedule attached hereto as **Exhibit A**, as well as any

additional amounts of transfers made that are avoidable, as may be revealed in further discovery.

## Second Cause of Action
### (Recovery of Transfers Pursuant to 11 U.S.C. § 550)

53. The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

54. Upon information and belief, the Defendant was either the initial or subsequent transferee of the Fraudulent Transfers, and/or the party for whom the Fraudulent Transfers were intended.

55. Based upon the foregoing, the Defendant is obligated to return the Fraudulent Transfers to the Trustee pursuant to 11 U.S.C. § 550.

## Third Cause of Action
### (Disallowance of Claims Pursuant to 11 U.S.C. § 502(d))

56. The Defendant is an entity from which property is recoverable under 11 U.S.C. § 550.

57. The Defendant is the initial transferee of the Fraudulent Transfers, or the person for whose benefit the Fraudulent Transfers were made.

58. The Defendant has not paid to the Trustee, or previously to the Debtor, the amount of the Fraudulent Transfers and has not turned over to the Trustee, or previously to the Debtor, the property for which the Defendant is liable under 11 U.S.C. § 550.

59. Pursuant to 11 U.S.C. § 550, any and all claims of the Defendant or any assignee of the Defendant against the Debtor's estate must be disallowed until such time as the Defendant pays to the Trustee all amounts sought herein.

60. Based upon the foregoing, pursuant to 11 U.S.C. § 502(d), the Trustee is entitled to entry of judgment disallowing, barring and expunging any claims that the Defendant

may hold against the Debtor or its estate.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, the Trustee requests that this Court enter its judgment against the Defendant as follows:

A. Avoiding the Two-Year Fraudulent Transfers pursuant to 11 U.S.C. § 548(a);

B. Ordering the Defendant to pay to the Trustee an amount not less than $14,527.73, the sum of the Fraudulent Transfers, pursuant to 11 U.S.C. § 550;

C. Disallowing any and all claims of claims of the Defendant until such time as the Defendant pays to the Trustee all amounts sought herein;

D. Awarding pre-judgment interest as the maximum legal rate running from the date of the Trustee's first demand to return the Fraudulent Transfers until the date judgment is entered against the Defendant;

E. Awarding post-judgment interest at the maximum legal rate from and after the date judgment is entered until payment thereof;

F. Awarding attorney's fees;

G. Requiring the Defendant to pay the amount of the judgment forthwith; and

H. Granting the Trustee such further and additional relief as the Court deems proper.

Dated: New York, New York  
December 9, 2018

ARCHER & GREINER, P.C.

By: /s/ Jeffrey Traurig  
    Jeffrey Traurig  
630 Third Avenue  
New York, New York 10017  
Tel: (212) 682-4940  
Email: jtraurig@archerlaw.com

*Proposed Special Litigation Counsel for*  
*Howard P. Magaliff, Chapter 7 Trustee*  
*of Allways East Transportation, Inc., Debtor*

215617432v1

**EXHIBIT A**

**Allways East Transportation Inc.**
**Fraudulent Transfers.**

| Payor/Payee | Transaction Type | Check # | Payment date | Payment Amount |
|---|---|---|---|---|
| Harrah's | Electronic Withdrawal | | 06/02/15 | 68.40 |
| Harrah's | Electronic Withdrawal | | 06/16/15 | 1,005.99 |
| Harrah's | Electronic Withdrawal | | 06/16/15 | 505.99 |
| Harrah's | Electronic Withdrawal | | 06/16/15 | 405.99 |
| Harrah's | Electronic Withdrawal | | 06/17/15 | 124.26 |
| Harrah's | Electronic Withdrawal | | 06/22/15 | 5,202.95 |
| Harrah's | Electronic Withdrawal | | 06/22/15 | 1,436.40 |
| Harrah's | Electronic Withdrawal | | 08/03/15 | 5,720.00 |
| Harrah's | Electronic Withdrawal | | 08/04/15 | 38.50 |
| Harrah's | Electronic Withdrawal | | 08/26/15 | 19.25 |
| Total | | | | **14,527.73** |